Hillsborough-northern judicial district
No. 2004-334

THE STATE OF NEW HAMPSHIRE

v.

ROBERT GRIMES

Argued: May 10, 2005
Opinion Issued: June 14, 2005

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Andrew Winters*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Robert Grimes, appeals his conviction in the Superior Court (*Abramson*, J.) of aggravated felonious sexual assault (AFSA). RSA 632-A:2 (Supp. 2002). We affirm.

The record supports the following facts. In February 2003, the victim was a single mother living in Hillsborough. On the afternoon of February 7, 2003, Robert Lusher introduced the defendant to the victim. Around 7:00 p.m., the victim, Lusher, and the defendant started playing a drinking game of checkers. Instead of using traditional checkers, the participants replaced the game pieces with red and black colored shot glasses filled with alcohol. When a player obtained another's piece, the opposing player had to drink the alcohol in the shot glass.

After the game started, the victim frequently checked on her son and his half-brother, who was visiting. Each time she returned to the table, Lusher and the defendant said to her, "Oh, you didn't take the shot, you walked away and you didn't drink this yet." The victim did not know whether the shots were being refilled. She believed that during the course of the game she drank six shots of alcohol and three bottles of Bacardi Silver, a malt beverage.

Around 9:30 p.m., the victim told Lusher and the defendant that she needed to slow down. She said that she "wasn't feeling very well at all" and "needed to go lay down." When the victim went to bed at 10:00 p.m., she felt "dizzy and nauseous," like she was "going to pass out," and that she was "going to hit the floor if [she] didn't lay down soon." She felt "sick to [her] stomach" and could barely make it to her bed.

The victim testified that she next remembered waking up naked with Lusher touching her breasts. She did not remember how or when her clothes came off. The victim told him to stop, hyperventilated, and vomited on the side of her bed. She kept "blacking in and out" as she tried to push him away. As she repeatedly lost and regained consciousness, she tried to push him away but felt that she "couldn't push hard enough" and "couldn't scream loud enough." She managed to run downstairs into the bathroom where she continued to throw up and cry. Frantically, she ran into the living room and stood there naked by herself screaming for help. Lusher and the defendant came into the room. At that point, the victim felt like she could not stand up any longer and that she "couldn't even feel [her] body." She then blacked out again.

The victim woke up naked in her bed around 12:30 a.m. with the defendant lying next to her. He was touching her breasts and face, and stroking her hair. She felt paralyzed from the neck down and very sick and weak. The defendant got on top of her. She told him to stop, but could not yell loud enough or push him away. The victim felt like she could not hold her body up, and she kept "passing in and out . . . of consciousness waking up in a different position." At one point, she woke up on her stomach, not knowing how she got into that position, and the defendant was holding her stomach up and penetrating her from behind. She next recalled that the defendant was on top of her and had finished ejaculating into her. The victim then remembered lying on her back unable to move, and then blacked out again.

The next thing the victim remembered was waking up around 6:30 a.m. with the defendant asleep in bed next to her. The victim found her clothing on the floor and vomit all over the room. The defendant was arrested the following afternoon, and subsequently indicted for AFSA on the theory that the victim was "physically helpless to resist." RSA 632-A:2, I(b).

On appeal, the defendant argues that there was insufficient evidence for the jury to find that the victim was "physically helpless to resist." To succeed on a sufficiency of the evidence claim, the defendant must show that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cossette*, 151 N.H. 355, 359 (2004). All reasonable inferences

derived from the evidence are viewed in the light most favorable to the State. *Id.*

RSA 632-A:2, I(b) provides:

> I. A person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances:
>
> . . .
>
> (b) When the victim is physically helpless to resist.

The defendant contends that the victim's attempts to verbally and physically resist the defendant showed that she was not physically helpless to resist. The statute does not define "physically helpless to resist," and the defendant argues that the phrase should be defined as "unconscious, asleep, or an equivalent physical condition."

Resolution of this issue requires us to interpret the statute and then to decide whether the evidence at trial was sufficient to prove the required elements. In matters of statutory interpretation, we first examine the language of the statute. *State v. Hudson*, 151 N.H. 688, 690 (2005). When a statute's language is plain and unambiguous, we need not look beyond it. *Id.* We construe Criminal Code provisions "according to the fair import of their terms and to promote justice." RSA 625:3 (1996); *see Hudson*, 151 N.H. at 690.

The defendant points to several other States that define the phrase "physically helpless" in statutes and asks us to adopt an interpretation similar to those statutory definitions. *See, e.g.*, R.I. Gen. Laws § 11-37-1(6) (2002) ("'Physically helpless' means a person who is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to do an act."). We decline to do so because when the legislature leaves a statutory term undefined, we ascribe to those words their plain and ordinary meanings. *See In the Matter of Blanchflower & Blanchflower*, 150 N.H. 226, 227 (2003).

We have previously approved, in dicta, the trial court's instruction that the phrase "physically helpless to resist" means that at the time of the offense, the victim was "physically incapable of resisting sexual penetration by the defendant." *State v. Jackson*, 141 N.H. 152, 153 (1996). Based on the plain meaning of the statute, we now hold that a victim is physically helpless to resist when the victim is physically incapable of resisting sexual penetration by the defendant. *See id.* In the present case, the victim testified that she felt paralyzed from the neck down and very sick and weak when the defendant was in bed next to her. After the defendant got on top of her, she felt like she "couldn't hold her body up."

She "tried pushing him away ... and telling him to stop," but she was unable to push him off. Further, she "kept passing in and out ... of consciousness waking up in a different position." At one point she woke up on her stomach with the defendant behind her holding her stomach up. Finally, she remembered the defendant on top of her ejaculating into her. She also testified after the incident that she remembered lying on her back unable to move.

The defendant argues that the fact that the victim was conscious during the incident and communicated her unwillingness to be sexually penetrated negates the State's claim that she was physically helpless to resist. We disagree.

█ Although the victim was conscious at certain times during the incident, it is not necessary for the victim to be "unconscious or in any particular state of intoxication at the time of the offense" to be rendered physically helpless to resist. *See id.* Further, although the victim was able to communicate her unwillingness to the defendant when she yelled at him to stop, we have previously concluded that while intoxication may cause a victim to be both "physically helpless to resist" and "unable to exercise reasonable judgment," the presence of one condition does not always imply the other. *Id.* at 155. Here, the fact that the victim had the cognizance and ability to verbally resist the defendant's sexual penetration does not mean that she had the ability to physically resist the defendant's sexual penetration. Although the victim attempted, in vain, to physically push the defendant off, the jury could have found that those efforts failed due to the fact that she felt ill, weak and at times unable to hold her body up, further demonstrating that she was physically helpless to resist the defendant.

Finally, the defendant argues that a broad interpretation of RSA 632-A:2, I(b) would make the provision redundant in light of the thirteen other ways of committing AFSA under RSA 632-A:2, I. When interpreting a statute, the defendant contends, we must presume that the legislature does not enact unnecessary and duplicative provisions. *See State v. Gifford,* 148 N.H. 215, 217 (2002). Hence, the defendant argues, we should adopt his proposed definition of "physically helpless to resist" to give independent meaning to all of the subsections of RSA 632-A:2, I. We disagree.

Under the other subsections of RSA 632-A:2, I, a defendant may be guilty of AFSA through different circumstances which focus on the actions of the *defendant,* such as when a defendant overcomes the victim through the actual application of superior physical strength, *see* RSA 632-A:2, I(a); a defendant coerces the victim to submit by threat of violence, *see* RSA 632-A:2, I(c); or a defendant penetrates the victim by the element of surprise before the victim has the chance to flee or resist, *see* RSA 632-A:2,

I(i). RSA 632-A:2, I(b), however, focuses on the condition of the *victim* where the victim is physically helpless to resist the defendant. We find no redundancy resulting from our plain reading of "physically helpless to resist."

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.