2007 WY 45

**Michael David KELLY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–37.

Supreme Court of Wyoming.

March 15, 2007.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dana J. Lent, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]  Michael David Kelly was convicted by a jury of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2005).  On appeal, he claims the evidence was insufficient to show that he caused "serious bodily injury" as required by the statute.  He also claims prosecutorial misconduct occurred during the State's closing argument.  We hold the evidence was not sufficient to show serious bodily injury as that term is defined in the statute.  On that basis, we reverse his aggravated assault conviction, order entry of a battery conviction and remand the case to the district court for re-sentencing on the battery conviction.

## ISSUE

[¶ 2]  The determinative issue is whether sufficient evidence was presented to show Mr. Kelly caused serious bodily injury as

required for an aggravated assault conviction.

## FACTS

[¶ 3]   On March 27, 2005, at approximately 9:30 p.m., Brett Osmon was awakened from his sleep by a knock at the door of his trailer house in Campbell County, Wyoming. He answered the door and found two men on his doorstep. They threatened him and demanded money. Mr. Osmon refused their demands and tried to shut the door. The two men forced their way inside and began beating Mr. Osmon. One of the men, later identified as Mr. Kelly, used his fists to knock Mr. Osmon to the floor while the other man repeatedly struck him in the back with the end of a baseball bat each time he tried to stand. During the assault, Mr. Kelly picked up an iron grate from the stove top and hit Mr. Osmon on the head with it.

[¶ 4]   After the attack, the two men left Mr. Osmon lying on the floor and departed. Mr. Osmon got up off the floor, went to the window, looked out and saw the two men get into a red car and drive away. Mr. Osmon went into the bathroom, cleaned himself up and then went back to bed.

[¶ 5]   Early the next morning, Mr. Osmon called the Campbell County Sheriff's Office. Deputy Randy Parker took the call. Mr. Osmon informed him two men had come to his home the night before, demanded money and assaulted him.

[¶ 6]   Deputy Parker arrived at Mr. Osmon's home at approximately 7:00 a.m. He observed footprints by the steps leading to the front door and footprints and scuff marks on the floor inside the trailer suggestive of a struggle. In the kitchen area, he saw blood spatters on the wall and the stove, and a grate from the stove lying on the floor. The grate appeared to have blood on it. The stove looked like it had been knocked out of place during a struggle. Outside the home, Deputy Parker observed tire tracks and acceleration marks in the road leading from Mr. Osmon's home.

[¶ 7]   Tony Seeman, a criminal investigator for the Campbell County Sheriff's Office, was the lead investigator on the scene. He arrived at Mr. Osmon's home shortly after Deputy Parker. Officer Seeman looked at Mr. Osmon's wounds and persuaded him to go to the emergency room to be checked for internal injuries and have the wounds cleaned. From Mr. Osmon's description of his attackers, Officer Seeman was able to identify Mr. Kelly as a possible suspect. During a photo line-up at the sheriff's office later that morning, Mr. Osmon identified Mr. Kelly as possibly being one of the men who attacked him. Mr. Kelly was arrested and charged with aggravated assault and battery in violation of § 6–2–502(a)(i), which provides:

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

[¶ 8]   At trial the jury was instructed that in order to find Mr. Kelly guilty of aggravated assault and battery, it had to find the State had proved the following elements beyond a reasonable doubt:

1. On or about the 27th day of March, 2005;

2. In Campbell County, Wyoming;

3. The defendant, Michael David Kelly;

4. Intentionally, under circumstances which showed an extreme indifference for human life;

5. Caused serious bodily injury to Brett Osmon.

The jury was also instructed that for purposes of aggravated assault, the term "serious bodily injury" means: "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." Wyo. Stat. Ann. § 6–1–104(a)(x) (LexisNexis 2005).

[¶ 9]   The jury was instructed that if it concluded the State did not prove all of the elements of aggravated assault beyond a reasonable doubt, it should consider whether the evidence proved the lesser included offenses of battery or assault. With respect to these lesser included offenses, the jury was in-

structed it could find Mr. Kelly guilty of "assault" if it found the State proved he unlawfully attempted to cause bodily injury to Mr. Osmon or "battery" if the State proved he intentionally caused bodily injury to Mr. Osmon. The jury was instructed that for purposes of these offenses, "bodily injury" is defined in § 6–1–104(a)(i) as "physical pain, illness or any impairment of physical condition."

[¶ 10] After a trial lasting a day and a half, the jury found Mr. Kelly guilty of aggravated assault and battery. The district court sentenced him to a term of three to eight years in an institution designated by the Wyoming Department of Corrections with credit for 169 days served prior to sentencing.

## STANDARD OF REVIEW

[¶ 11] When reviewing the sufficiency of the evidence, this Court accepts as true the State's evidence and affords it those inferences which may be reasonably and fairly drawn from it. *Jones v. State*, 2006 WY 40, ¶ 9, 132 P.3d 162, 165 (Wyo.2006). We do not consider conflicting evidence or inferences that can be drawn from such evidence. *Id.* Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Id.*

## DISCUSSION

### 1. Sufficiency of the Evidence

[¶ 12] In his first issue, Mr. Kelly claims the State's evidence was insufficient to show he caused Mr. Osmon "serious bodily injury". He asserts the evidence presented did not show the injuries he inflicted upon Mr. Osmon created a substantial risk of death or caused severe disfigurement or loss or impairment of any bodily member or organ. Without such evidence, he contends, the conviction cannot stand.

[¶ 13] The State argues the evidence was sufficient to show Mr. Kelly caused serious bodily injury. The State points to the evidence showing Mr. Kelly beat Mr. Osmon with his fists and hit him on the head with an iron stove grate, causing profuse bleeding and permanent scarring. The State asserts this Court previously held in *State v. Woodward*, 69 Wyo. 262, 240 P.2d 1157, 1160 (Wyo. 1952), albeit under a different statute,[1] that evidence of profuse bleeding, bruising and a head laceration resulting from a beating was sufficient to support an aggravated assault conviction. The State also cites *Lucero v. State*, 14 P.3d 920, 923 (Wyo.2000) in which we said the term "serious bodily injury" does not have a technical legal meaning so different from its ordinary meaning that an instruction defining the term for a jury is necessary.

[¶ 14] The difficulty with the State's assertions is that the current statute specifically identifies the sort of bodily injury a defendant must cause in order to be convicted of aggravated assault under § 6–2–502(a)(i). Pursuant to the definition of serious bodily injury applicable to the aggravated assault statute found in § 6–1–104(a)(x), the injury must: 1) create a substantial risk of death; 2) cause miscarriage; 3) cause severe disfigurement; or 4) cause protracted loss or impairment of the function of any bodily member or organ.

[¶ 15] This Court has specifically considered whether injuries constituted "serious bodily injury" within the meaning of the statutes in two cases. In *O'Brien v. State*, 2002 WY 63, 45 P.3d 225 (Wyo.2002), the State claimed the victim was beaten so savagely that his life was endangered and his injuries created a substantial risk of death. The State presented medical testimony showing the victim's jaw was broken at the back of the joint, a break that rarely results from a blow from a fist. The State also presented medical testimony indicating the break required surgery to prevent the victim's tongue from blocking his airways. We held this

1. *Woodward*, 240 P.2d at 1159, involved § 9–210 Wyo. Comp. Stat.1945, which defined aggravated assault and battery as follows: " 'If any person shall unlawfully and maliciously inflict upon another person, either with or without any weapon or instrument, any grievous bodily harm, or shall unlawfully and maliciously cut, stab or wound any other person, the person so offending shall be fined' etc."

evidence was sufficient to support the jury's determination that the defendant caused serious bodily injury.

[¶ 16] In *Cazier v. State,* 2006 WY 153, 148 P.3d 23 (Wyo.2006), the State presented evidence that the victim was hospitalized for several days after being whipped with a cable. The State also presented medical testimony indicating the injuries were "extremely remarkable" and caused chemical abnormalities in the victim's body. Additionally, the State presented photographs showing numerous wounds on the victim's head, face and body and the victim showed the jury the scars that still existed eight months after the assault. We held the jury could have concluded from the evidence that the victim had, at a minimum, suffered severe disfigurement; therefore, the State met its burden of proving the defendant caused serious bodily injury.

[¶ 17] Under the particular facts presented in *O'Brien* and *Cazier,* we held rare, remarkable injuries that required surgery or resulted in inpatient hospitalization and scarring constituted serious bodily injuries within the meaning of § 6–2–502(a)(i). Although Mr. Osmon was left with a scar, his injuries did not result in inpatient hospitalization or surgery. Also, there was no testimony, as there was in *O'Brien,* suggesting Mr. Osmon's injuries were life threatening.

[¶ 18] Additionally, the manner in which Mr. Osmon and the emergency room responded raises questions about the seriousness of his injuries. Mr. Osmon cleaned his wounds and went back to bed after the assault. He testified he did not think he was seriously injured at the time. He sought medical treatment only when Officer Seeman persuaded him to do so. At the emergency room, his wounds were cleaned, he was given an antibiotic and he was released. His wounds did not require stitches, inpatient hospitalization, surgery or follow-up medical treatment. He suffered no broken bones. The scar on his scalp left by the stove grate was above his hairline and no evidence was presented showing it was readily visible at the time of trial.

[¶ 19] Under the circumstances, we have no choice but to conclude the evidence did not support a verdict finding Mr. Kelly caused Mr. Osman serious bodily injury as the term is defined in our statute. No evidence was presented showing the injuries inflicted on Mr. Osmon created a substantial risk of death or caused severe disfigurement or loss or impairment of function of a bodily organ or member.[2] While there is no question about the savageness of the attack, the nature of the attack is not the focus of the inquiry under the language the Wyoming legislature has chosen to employ. Instead, under Wyoming's statutory language, the focus of the inquiry is the nature of the injuries inflicted. Ferocious as the attack may have been, the injuries Mr. Osmon sustained did not result in serious bodily injury within the meaning of the aggravated assault statute.

[¶ 20] Our holding is in accord with the results reached in other jurisdictions sharing the same or substantially similar statutory language. To sustain a conviction for aggravated assault, the vast majority of cases from these jurisdictions require evidence showing the injury created a substantial risk of death or caused severe disfigurement or protracted impairment of a bodily function or member. In *State v. Pheng,* 2002 ME 40, 791 A.2d 925 (Me.2002), for example, the State presented evidence showing the victim was bleeding and unconscious, was transported to the hospital by ambulance, remained hospitalized for several days, missed the first quarter of school because of his injuries and could not eat solid food for several months after the attack. The court held the evidence was sufficient to show serious bodily injury within the meaning of the Maine statute.[3]

---

2. In closing, the State argued that skin is the human body's primary organ and the blow to Mr. Osmon's head with the stove grate caused permanent scarring and impaired the skin. However, no evidence was presented showing the blow caused "severe" disfigurement or "protracted loss or impairment of the function" of Mr. Osmon's skin. Absent such evidence, the

State simply did not prove the assault caused serious bodily injury.

3. The Maine statute defines "serious bodily injury" for purposes of aggravated assault as: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the

[¶ 21] Similarly, in *Fleming v. State*, 604 So.2d 280, 292 (Miss.1992), the court held the evidence was sufficient to show serious bodily injury under Section 210.0 of the Model Penal Code (1980) [4] where the victim was hospitalized for four days; he suffered a laceration of the scalp requiring sutures, a non-displaced fracture of the left jaw bone and a comminuted fracture of the left forearm requiring surgery to attach a compression plate and perform a bone graft; and he was unable to work for four weeks. *See also State v. Flores*, 1998 MT 328, 292 Mont. 255, 974 P.2d 124 (1998) (holding the victim suffered a serious bodily injury where the evidence showed he sustained a wide, deep, gouge-wound to his right forearm exposing torn muscle, tissue, and bone; the injury precluded him from working in his pre-injury occupation; and he underwent physical therapy and, at the time of trial, still could not make a closed fist); *Commonwealth v. Lewis*, 2006 PA Super 314, 911 A.2d 558 (Pa.Super.Ct.2006) (holding the evidence was sufficient to sustain the conviction for aggravated assault where the defendant punched the victim in the stomach and face; the victim was in an unconscious guarded condition in the emergency room after being intubated and placed on a ventilator, had multiple facial lacerations many of which penetrated the muscle tissue down to the facial bones, and chip fractures to her cheekbone; she was hospitalized for nine days; blood was drained from her stomach to prevent aspiration pneumonia; her wounds were sutured; she needed someone to care for her for a month; she could not eat solids until the stitches were removed; she missed work for three months; and she still had scars on her face at the time of trial.)

[¶ 22] Of equal significance to our conclusion, are cases from jurisdictions having similar statutory language to Wyoming where courts have held injuries did not constitute serious bodily injuries. In *Moore v. State*, 739 S.W.2d 347 (Tex.Crim.App.1987), for example, the defendant hit the victim in the face and stabbed him in the back with a knife. After the assault, the victim went home and laid down on the couch. When he got up from the couch, he noticed blood in the spot where he had been lying. The police were notified and they convinced the victim to seek treatment. He was taken by ambulance to the emergency room where he was treated and released. The court held the evidence was insufficient to show he sustained serious bodily injury because there was no showing the injury was life threatening or caused permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. *See also State v. Kane*, 335 N.J.Super. 391, 762 A.2d 677 (Ct.App. Div.2000) (holding that victim who received six stitches over her left eye and a broken nose when she was struck in the face did not sustain "serious bodily injury").

[¶ 23] The above cases are representative of the many cases in which courts have considered whether an injury constituted "serious bodily injury" within the meaning of statutes containing language similar to § 6-1-104(a)(x). To support a conviction for aggravated assault, nearly all of the cases require injuries significantly more serious than those Mr. Osmon sustained. Given the express language contained in our statute defining serious bodily injury as an injury creating a substantial risk of death or causing severe disfigurement or protracted loss or impairment of the function of any bodily member or organ, we hold the evidence was not sufficient to support Mr. Kelly's conviction for aggravated assault. Our holding on this issue makes it unnecessary to address Mr. Kelly's claim of prosecutorial misconduct.

[¶ 24] When we reverse a conviction for an offense, and the jury verdict supports conviction of a lesser-included offense, we have the authority to order resentencing on the lesser-included offense. *Goodwine v. State*, 764 P.2d 680 684 (Wyo. 1988); *Simonds v. State*, 762 P.2d 1189, 1193 (Wyo.1988). In this case, the district court

---

function of any bodily member or organ, or extended convalescence necessary for recovery of physical health." 17–A M.R.S.A. 2(23) (1983).

**4.** Section 210.0 defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

appropriately instructed the jury on the offense of battery as a lesser-included offense of aggravated assault. The evidence presented at trial was sufficient to support a jury verdict finding Mr. Kelly guilty of battery. Therefore, we set aside the aggravated assault conviction, order entry of a battery conviction and remand to the district court for re-sentencing on the battery conviction.