2008 WY 75

**Charles Allen HAYNES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0263.

Supreme Court of Wyoming.

July 1, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Mi-

chael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] A jury convicted Charles Allen Haynes on two counts of first degree sexual assault. He appeals to this Court claiming that the evidence was insufficient to support his conviction for sexually assaulting a "physically helpless" victim; the prosecutor committed misconduct by misinforming the jury concerning the effect of its verdict and by using victim impact evidence to inflame the jury's passion; and the district court erred in refusing to address the issue of his mental competency before sentencing. We affirm.

## ISSUES

[¶ 2] Mr. Haynes states the issues for our determination as follows:

I. When evidence was presented to the court at sentencing indicating that the defendant may lack the mental capacity to be sentenced was the court required to address the issue of the defendant's mental competence prior to proceeding to sentence?

II. When the prosecutor intentionally introduced untrue testimony and irrelevant argument to misinform the jury as to its duty and the effect of its verdict did his misconduct create reversible error?

III. Where no evidence was presented to indicate that the victim was "physically helpless" as defined in the statute was there insufficient evidence to sustain a conviction on a charge of first degree sexual assault under W.S. § 6–2–302(a)(iii)?

The State rephrases the first issue as:

I. Did the district court abuse its discretion in denying appellant's motion for new trial?

Otherwise, the State presents substantially the same issues.

## FACTS

[¶ 3] On the night of September 26, 2005, Officers Mike Wenz and Chad Trebby and Detective Andy Boisvert of the Gillette Police Department responded to a sexual assault complaint from Campbell County Memorial Hospital. At the hospital, N.H. told the officers that she believed Mr. Haynes had sexually assaulted her three-year-old daughter, K.H., shortly after 10:00 p.m. that night. N.H informed the officers that Mr. Haynes was her husband's nephew and had been staying at their home. She told the officers that her daughter had been asleep in her bedroom and came into their room crying and saying she was wet. N.H. felt her daughter's training pants and they were dry. K.H. said, "No, mom, in back." N.H. felt inside the back of the training pants and felt a thick slimy substance. Upon further inspection, N.H. concluded the substance was semen.

[¶ 4] Officer Wenz spoke with Mr. Haynes who had come to the hospital with his uncle and aunt. Mr. Haynes initially denied the allegation. Officer Wenz informed Mr. Haynes that semen was found in the child's training pants. Mr. Haynes then said he may have sleepwalked into K.H.'s room, but he could not remember anything else. As the discussion continued, Mr. Haynes told Officer Wenz that he went into the child's room to show affection for her, engaged in oral sex with her and put his penis between her legs.

[¶ 5] Officer Trebby and Detective Boisvert transported Mr. Haynes to the police department for a taped interview. Mr. Haynes repeated essentially the same story he had told Officer Wenz at the hospital. He also said that he had sexual contact with K.H. previously on September 21, 2005. Mr. Haynes was arrested and charged with one count of first degree sexual assault under Wyo. Stat. Ann. § 6–2–302(a)(iii) (LexisNexis 2005) and one count of third degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(ii) (LexisNexis 2005) for the acts he said occurred on September 21, 2005, and two counts of first degree sexual assault in violation of § 6–2–302(a)(iii) for the acts on September 26, 2005.

[¶ 6] Thereafter, the defense moved for and the circuit court entered an order suspending further proceedings and directing the Wyoming State Hospital to evaluate Mr. Haynes pursuant to Wyo. Stat. Ann. § 7–11–303(b) and (c) (LexisNexis 2007) to determine whether he suffered from a mental illness or deficiency and, if so, whether he lacked the capacity to comprehend his position, understand the nature of the court proceedings, conduct his defense, and cooperate with defense counsel. After consideration of the State Hospital's report, the circuit court entered an order finding Mr. Haynes mentally fit to proceed.

[¶ 7] On February 5, 2006, following a preliminary hearing, the circuit court bound Mr. Haynes over to district court for trial. The following day, the State filed an amended information adding three second degree sexual assault counts as alternatives to the first degree sexual assault counts initially alleged. Prior to the arraignment in district court, defense counsel asked for and obtained an order granting a second mental examination of Mr. Haynes. As part of the examination, the district court requested an assessment of whether, as a result of any mental illness or deficiency, Mr. Haynes lacked the capacity at the time of the alleged sexual assaults to appreciate the wrongfulness of his conduct or conform his conduct to the law.

[¶ 8] On June 8, July 13 and July 28, 2006, the district court held a competency hearing during which it heard testimony from three of the psychologists who evaluated Mr. Haynes. At the conclusion of the hearing, the district court found Mr. Haynes fit to proceed to trial. On July 31, 2006, Mr. Haynes pleaded not guilty and not guilty by reason of mental illness.

[¶ 9] A jury trial began on May 14, 2007. At the close of the State's case-in-chief, the defense moved for an acquittal on Counts I—III, VI and VII. The district court granted the motion as to Counts I—III, the counts alleging sexual assault on September 21, 2005, on the ground that no evidence was presented to corroborate Mr. Haynes' statement and, by itself, his statement was insufficient evidence that a sexual assault occurred to allow the counts to go to the jury. The trial continued on Counts IV—VII, the counts alleging first and second degree sexual assault on September 26, 2005.

[¶ 10] On May 17, 2007, the district court submitted the case to the jury. The verdict form given to the jury charged Counts IV (first degree sexual assault) and V (second degree sexual assault) alternatively and Counts VI (first degree) and VII (second degree) alternatively. The verdict form instructed the jury that if it found Mr. Haynes guilty on Counts IV and VI, the first degree sexual assault counts, it should not answer the questions for Counts V and VII. After deliberating, the jury found Mr. Haynes guilty on Counts IV and VI.

[¶ 11] On July 24, 2007, Mr. Haynes filed a motion for new trial on the basis of newly discovered evidence. Mr. Haynes asserted that a Wyoming State Hospital risk assessment conducted before sentencing at the State's request indicated that Mr. Haynes was functioning at a six to seven-year-old level, suggesting that he was not competent to stand trial. The State opposed the motion, contending the assessment did not constitute new evidence because it contained no information the parties did not have before trial. After a hearing, the district court denied the motion. The district court entered a judgment of guilt against Mr. Haynes and sentenced him to two consecutive terms of 45 to 50 years in prison. The district court later amended the sentence to make the terms concurrent.

## DISCUSSION

### 1. Sufficiency of the Evidence to Prove the Victim was Physically Helpless

[¶ 12] The State charged Mr. Haynes with, and the jury convicted him of, first degree sexual assault under the following statute:

§ 6–2–302. **Sexual assault in the first degree.**

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

. . . .

(iii) The victim is physically helpless, and the actor knows or reasonably should know that the victim is physically helpless and that the victim has not consented;

The phrase "physically helpless" as used in the above provision is defined in Wyo. Stat. Ann. § 6–2–301(a)(iii) (LexisNexis 2005) as follows:

(iii) "Physically helpless" means unconscious, asleep or otherwise physically unable to communicate unwillingness to act;

[¶ 13] In its amended information, the State also charged Mr. Haynes with second degree sexual assault under the following statute:

**§ 6–2–303. Sexual assault in the second degree.**

(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first .degree:

. . . .

(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim.[1]

[¶ 14] Mr. Haynes contends the evidence was insufficient to support his convictions under § 6–2–302(a)(iii) because the State failed to prove that K.H. was "physically helpless" as defined in § 6–2–301(a)(iii). In fact, Mr. Haynes asserts, the State did not try to prove K.H. was physically helpless within the meaning of the statute, but that she was physically helpless because she was a three-year-old girl who weighed approximately 30 pounds and Mr. Haynes was a grown man. Proof of these facts, he contends, does not support a conviction of first degree sexual assault.

[¶ 15] The State asserts the evidence presented was sufficient to prove the victim was physically helpless as required by the first degree sexual assault statute. The State claims the mother's testimony that she believed her daughter was asleep during the sexual assault was sufficient evidence from which a reasonable juror could infer that the victim was physically helpless at the time Mr. Haynes sexually assaulted her.

[¶ 16] When reviewing the sufficiency of the evidence, this Court accepts as true the State's evidence and affords it those inferences which may be reasonably and fairly drawn from it. *Kelly v. State*, 2007 WY 45, ¶ 11, 153 P.3d 926, 929 (Wyo.2007). We do not consider conflicting evidence or inferences that can be drawn from such evidence. *Id.* Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Id.* We apply these standards even when no objection to the alleged error is made at trial. *Garay v. State*, 2007 WY 130, ¶ 2, 165 P.3d 99, fn. 1 (Wyo.2007).

[¶ 17] In its case-in-chief, the State presented the testimony of N.H. that when she arrived home at approximately 9:30 p.m. on September 26, 2005, she checked on her daughter and she was asleep. N.H. testified that she went to bed and was watching T.V. when she heard her daughter fussing. She testified that the sound her daughter made was "kind of a cry in her sleep," the "kind of muffled fussy cry that babies have." She testified that she did not go into K.H.'s room because her daughter was "still sleeping" and she did not want to wake her.

[¶ 18] Mr. Haynes argues the mother's testimony was not sufficient to prove beyond a reasonable doubt that K.H. was asleep in light of the testimony of Jerry Bachman, the registered nurse who participated in the examination of K.H. at the hospital on the night of the assault. Ms. Bachman testified that during the examination, K.H. stated that

---

1. Section 6–2–303(a)(v) was repealed effective July 1, 2007. A new statute was enacted, § 6–2–314, with an effective date of July 1, 2007, creating the offense of first degree sexual abuse of a minor. The new statute provides in pertinent part:

(a) An actor commits the crime of sexual abuse of a minor in the first degree if:

(i) Being sixteen (16) years of age or older, the actor inflicts sexual intrusion on a victim who is less than thirteen (13) years of age[.] The statute imposes a maximum sentence of 50 years imprisonment.

"her friend" had "licked her pee-pee." Mr. Haynes argues that the only inference that can be fairly and reasonably drawn from the child's statement, which the State also presented as evidence, is that K.H. was awake when the assault occurred.

[¶ 19] Having considered the record in its entirety, we do not find the mother's testimony and the child's statement to the nurse to be contradictory. Viewing the evidence in the light most favorable to the prosecution, we conclude the jury reasonably could have concluded that the child was asleep when Mr. Haynes began touching her and woke up at some point to find him engaging in oral sex with her. Evidence that she was asleep when the assault began and woke up during it is sufficient to satisfy the "physically helpless" element of the statute in effect at the time.

[¶ 20] Our conclusion that the evidence was sufficient even though there was evidence that K.H. woke up during the encounter is consistent with decisions from other jurisdictions having the same or similar statutory provisions. In *Crable v. Sherry,* 2007 WL 2983636, 2007 U.S. Dist. LEXIS 75555 (E.D.Mich. No. 2:06–CV–14861, Oct. 11, 2007), for example, the victim woke up in the middle of the night to find the defendant on top of her having sexual intercourse. The court concluded she was physically helpless for purposes of the Michigan statute. Similarly, in *State v. Shields,* 328 Mont. 509, 122 P.3d 421 (2005), the court held that the fact that the victim had some sensory perception during a sexual assault did not preclude a jury from finding that she was physically helpless. In *Shields,* the victim testified that she awoke to the sensation of weight being placed on her body, but did not know what was happening. Shortly thereafter, she realized that she was being raped. *See also, State v. Grimes,* 152 N.H. 310, 876 A.2d 753 (2005), where the victim woke up several times during the assault but was unable to physically resist the defendant and the court held the evidence was sufficient for the jury to find that she was physically helpless.

[¶ 21] In concluding that the evidence supported the verdict, we acknowledge that, in attempting to prove the physically helpless

element of the offense, the State introduced evidence of the victim's age and weight and stated in closing argument that, "a 3–years and some months old little girl who weighs approximately 30 pounds was physically helpless against a grown human male." Thus, the State focused not on showing K.H. was asleep but on her age, size and gender, factors that have no bearing on the issue of whether she was physically helpless for purposes of the first degree sexual assault statute. Simply put, the evidence the State affirmatively offered at trial to prove the victim was physically helpless, and the argument it makes now on appeal are inconsistent.

[¶ 22] Notwithstanding the State's arguments, our task at this stage of the proceedings is to determine whether evidence was presented from which the jury could have found that each element of first degree sexual assault was proven beyond a reasonable doubt. The jury was instructed that in order to find Mr. Haynes guilty of the offense charged, it had to find that he inflicted sexual intrusion on a physically helpless victim and knew or should have known she was physically helpless. The jury also was instructed that in order to find that K.H. was physically helpless, it had to find that she was unconscious, asleep or otherwise physically unable to communicate unwillingness to act. We presume the jury followed the court's instructions. *Martin v. State,* 2007 WY 2, ¶ 21, 149 P.3d 707, 713 (Wyo.2007). The jury heard testimony, as set forth above, from which it could have concluded that K.H. was asleep and, therefore, physically helpless when Mr. Haynes sexually assaulted her. The jury also heard testimony from which it could have concluded that K.H. woke up during the sexual assault. This evidence was sufficient to support the jury's verdict.

### 2. *Prosecutorial Misconduct*

[¶ 23] Mr. Haynes claims that prosecutorial misconduct occurred in two instances during the trial. We review allegations of prosecutorial misconduct by reference to the entire record to determine whether a defendant's case has been so prejudiced as to deny him a fair trial. *Szymanski v. State,* 2007 WY 139, ¶ 27, 166 P.3d 879,

886 (Wyo.2007). Reversal is not warranted unless a reasonable probability exists that absent the error the appellant may have enjoyed a more favorable verdict. *Id.*

■ [¶ 24] The first instance of alleged misconduct occurred during the prosecutor's questioning of Abram Hitt, a forensic psychologist at the Wyoming State Hospital called by the State as a rebuttal witness.

Q. Doctor, if you know, given the evaluations in this case and your assessment of Mr. Haynes, would the Wyoming State Hospital be able to detain Mr. Haynes if he were found not guilty by reason of mental illness?

A. I don't believe so. I mean that would be up to the court, of course. Would he fit there—

At this point, defense counsel objected and asked that the answer be stricken from the record. The district court sustained the objection. The State withdrew the question. After Dr. Hitt's testimony, the State rested.

[¶ 25] The following day, after hearing argument on and denying the defense motion for judgment of acquittal, the district court on its own initiative and without prompting by the defense expressed concern about the prosecutor's question to Dr. Hitt the previous day. The court advised the parties that it considered the question highly improper and had drafted and was inclined to give the following limiting instruction:

> On redirect examination of Dr. Hitt, the State inquired of him as to the probable or likely disposition of the defendant in the event the jury found the defendant not guilty by reason of mental illness or deficiency and he was remanded to the Wyoming State Hospital.

> The defendant objected to this question and the court sustained the objection. The answer was stricken. However, the witness answered the question before the Defendant objected.

> You are instructed to disregard the answer of the witness and not permit it to enter into your deliberations in any way.

> The disposition of the Defendant in the event you find him to be not guilty by

reason of mental illness or deficiency is a matter of no concern to the jury.

The State responded that it had no objection to the instruction. Defense counsel moved for a mistrial, asserting that the question to Dr. Hitt constituted prosecutorial misconduct. The district court denied the motion. Defense counsel stated they did not object to the proposed instruction but reiterated that the question constituted prosecutorial misconduct and the proper remedy was to grant a mistrial.

■ [¶ 26] It is well established that a jury is to base its verdict on the evidence before it, without regard to the possible consequences of the verdict. *Shannon v. United States,* 512 U.S. 573, 576, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994).

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Id.* at 579, 114 S.Ct. 2419.

[¶ 27] This Court addressed the issue in *Lonquest v. State,* 495 P.2d 575, 584 (Wyo. 1972) where the defendant claimed error in the trial court's refusal to give an instruction summarizing involuntary hospitalization proceedings that would be instituted if the defendant were acquitted on grounds of mental incompetency. The Court stated:

> The function of the jury in this case or any criminal case is to determine the guilt or innocence of a defendant upon the evidence presented. This cannot depend upon probable or proper disposal of the defendant thereafter. The giving of such instruction injects a totally irrelevant element into the jury's deliberations separate

and apart from the function they serve and may tend to confuse them. The suggested instruction may be an invitation for the jury to reach a compromise verdict.

*Id.*

[¶ 28] Whether the issue of the defendant's fate is presented to encourage the jury to reach, or not to reach, a verdict of not guilty by reason of mental illness, it is not an appropriate issue for the jury's consideration. *Id.; Janpol v. State,* 2008 WY 21, ¶ 25, 178 P.3d 396, 405 (Wyo.2008). The prosecutor's question to Dr. Hitt violated this principle because it raised the specter that a verdict of not guilty by reason of mental deficiency would result in Mr. Haynes' release, a matter that was not within the province of the jury and had the potential to distract the jury from its fact-finding responsibility. We agree with the district court that the question was highly improper.

[¶ 29] Our conclusion that the question was improper does not end the inquiry. We must consider whether Mr. Haynes' case was so prejudiced by the improper question as to deny him a fair trial. *Szymanski,* ¶ 27, 166 P.3d at 886. We focus our attention on whether a reasonable probability exists that absent the prosecutor's question, Mr. Haynes may have enjoyed a more favorable verdict. From the entire record, we conclude there is not a reasonable probability of a more favorable verdict and Mr. Haynes was not so prejudiced as to deny him a fair trial.

[¶ 30] Our discussion focuses on whether a reasonable probability exists that the jury would have returned a verdict of not guilty or not guilty by reason of mental illness if the prosecution had not asked the improper question. The evidence implicating Mr. Haynes as the perpetrator of the sexual assault was essentially undisputed. The only witness Mr. Haynes presented in his defense was Robert Innes, a clinical psychologist who evaluated Mr. Haynes on two occasions prior to trial, first, to determine his mental competency to proceed to trial and, second, to determine his mental status at the time of the offense. Dr. Innes' testimony focused exclusively on the defense of not guilty by reason of mental illness.

[¶ 31] Dr. Innes testified, in accordance with his written report, that in his opinion Mr. Haynes':

> [M]ental status at the time of the offense is indeterminate. That is, although he has suffered from long term conditions which have precluded the establishment of mature appropriate or stable interpersonal relationships, *what was actually going through his mind at the time* of the offense, *what his emotional status was at the time,* or what was actually *his intent at the time, are all unknown.* He professes lack of memory for the time of the offense, and without his assistance, *surmising his mental status at the time of the offense is viewed as being highly unreliable.*

(emphasis added.) Although Dr. Innes also testified that in his opinion Mr. Haynes' asserted lack of memory and pattern of shutting down when angry raised "plausible arguments" that he met the statutory requirements for a finding of not guilty by reason of mental illness, he equivocated by prefacing that opinion with the statement that he did not think the lack of memory and pattern of shutting down "establish or prove that [Mr. Haynes] meets the requirements of the law for a determination of not guilty by reason of mental illness." His further testimony that in his opinion Mr. Haynes "was probably not cognizant of right or wrong at the time of the offenses and was not at that point able to conform his conduct to the law" was undermined by his testimony based upon his written report that Mr. Haynes' mental status at the time of the offense was "indeterminate" and "unknown" and he viewed any attempt to surmise what it may have been as "highly unreliable."

[¶ 32] In addition to the testimony of Mr. Haynes' only witness, the jury heard testimony from the State's rebuttal witness, Abram Hitt, a forensic psychologist at the Wyoming State Hospital who evaluated Mr. Haynes by court order to determine his mental status at the time of the offense. Dr. Hitt testified that in his opinion, Mr. Haynes did not meet the statutory criteria for mental illness or deficiency. Dr. Hitt testified:

[T]he terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality that are not attributable primarily to self-induced intoxication. I don't think he meets that threshold criteria.

[¶ 33] At the close of the evidence, the jury was instructed that Mr. Haynes was presumed to be mentally responsible; therefore, he had the burden of proving by the greater weight of the evidence that at the time of the sexual assault as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law. The jury was also instructed that under Wyoming law "mental illness or deficiency" means severe, abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality. We presume the jury followed these instructions. *Martin*, ¶ 21, 149 P.3d at 713. Given this presumption, the evidence the defense presented, which was at best equivocal, and the State's evidence, we conclude a reasonable probability did not exist that the jury would have returned a verdict of not guilty or not guilty by reason of mental illness if the prosecution had not asked the improper question. Therefore, reversal on the basis of the improper question is not warranted.

[¶ 34] Having concluded that the prosecutor's question is not grounds for reversal in this case, we nevertheless strongly caution Wyoming prosecutors to refrain from questions and argument that inform, or misinform, the jury concerning the consequences of its verdict. This is the second appeal to come before this Court in recent months in which we have been asked to reverse a criminal conviction based upon a prosecutor's improper comment concerning the conse-

quences of a not guilty by reason of mental illness verdict. In *Janpol*, 2008 WY 21, 178 P.3d 396, a first degree murder case, the prosecutor told the jury, incorrectly, that the defendant would "walk" if he was found not guilty by reason of mental illness. We cannot stress enough that such comments are highly improper. Such comments also do a great disservice to the public by creating grounds that may require this Court to overturn otherwise appropriate guilty verdicts, sometimes in cases involving horrendous offenses.

[¶ 35] As we have said before:

The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, *he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*

*Moe v. State*, 2005 WY 58, ¶ 21, 110 P.3d 1206, 1214 (Wyo.2005), quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (emphasis added). The blow struck by the prosecutor in Mr. Haynes' case was not only unnecessary considering the strength of the State's case, it was a foul and improper one. It is the expectation of this Court that such conduct on the part of the State's prosecutors will end.[2] In recognition that similar directions have been ignored by some prosecutors, we encourage district

---

**2.** Should we continue to see cases in which a prosecutor improperly informs the jury of the consequences of a verdict of not guilty by reason of mental illness, we will consider referral of the matter to the Board of Professional Responsibility as is our responsibility under Cannon 3D of the Code of Judicial Conduct and we remind district judges of their same responsibility. For

cases in which other courts have discussed such referrals, *see United States v. Starusko*, 729 F.2d 256, 265 (3d Cir.1984); *AIG Hawaii Ins. Co. v. Bateman*, 82 Hawai'i 453, 923 P.2d 395, 402 (1996); *Gonzalez v. State*, 768 S.W.2d 471, 473 (Tex.Ct.App.1989); *Suarez v. State*, 481 So.2d 1201, 1206 (Fla.1985).

courts in the future not only to instruct the jury to disregard the comment and that the disposition of the defendant is not a matter for jury consideration, but also to intervene with an instruction countering the prosecutor's misstatement. *See Shannon*, 512 U.S. at 587, 114 S.Ct. 2419, where the Court indicated such an instruction may be necessary if, for example, a witness or prosecutor states in the presence of the jury that a particular defendant would "go free" if found not guilty by reason of insanity.

[¶ 36]   Mr. Haynes also claims prosecutorial misconduct occurred when, during closing argument in rebuttal, the State waved a photograph of the victim in front of the jury and said: "Ladies and gentlemen, of the three victims in this case, please do not forget her." [3]   Mr. Haynes contends this constituted improper victim impact argument which is prohibited under Wyoming case law and Standard 3–5.8(c) and (d) of the ABA Standards for Criminal Justice: Prosecution Function Standards (3d ed.1993).

[¶ 37]   Defense counsel did not object to the argument at trial; therefore, Mr. Haynes has the burden of demonstrating that it constituted plain error.   Plain error exists when the incident alleged as error clearly appears in the record; the incident transgressed a clear and unequivocal rule of law; and the party claiming the error was denied a substantial right which materially prejudiced him. *Szymanski*, ¶ 28, 166 P.3d at 886.

[¶ 38]   The record clearly reflects that the prosecutor made the statement while showing the jury the photograph.   The law is clear that victim impact argument is inappropriate during the guilt phase of a criminal prosecution and prosecutors should not make arguments calculated to inflame the passions or prejudices of the jury. *Whitney v. State*, 2004 WY 118, ¶ 89, 99 P.3d 457, 487 (Wyo.2004).   The State contends that is not what happened here.   Rather, the State asserts, the prosecutor was responding to defense counsel's statements during closing

argument that Mr. Haynes had been subjected to sexual assault when he was a child.

[¶ 39]   From our review of the closing arguments in their entirety, we are not convinced the prosecutor's statement and use of the photograph was a direct response to defense counsel's argument.   We assume for purposes of this discussion that it was improper victim impact argument intended to inflame the jury's passion, and we turn to consideration of whether it resulted in material prejudice.

[¶ 40]   We have established the following non-exhaustive list of factors for evaluating whether material prejudice resulted: 1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and prejudice the accused; 2) whether the remarks were isolated or extensive; 3) the strength of competent proof to establish guilt, absent the remarks;   4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; 5) the presence or absence of a limiting instruction; 6) whether the error was invited by defense counsel; 7) whether the failure to object could have been the result of tactical decisions;   and 8) whether, in light of all the evidence, the error was harmless. *Trujillo v. State*, 2002 WY 51, ¶ 28, 44 P.3d 22, 28 (Wyo.2002).   Weighing all of the factors against the record as a whole, we do not think the prosecutor's isolated improper remark materially prejudiced Mr. Haynes.   Given the strength of the evidence against Mr. Haynes, it is unlikely the prosecutor's statement and use of the photograph misled the jury or prejudiced the accused.   The remark was isolated and there is nothing in the record to suggest the prosecutor made the remark or used the photograph to divert the jury's attention.   There was no objection. In light of all the evidence, the prosecutor's remark was not plain error.

### 3.  *Evidence of Mr. Haynes' Mental Incompetence at Sentencing*

[¶ 41]   After the jury rendered its verdict and before sentencing, the State filed

---

3.  It appears that the prosecutor was referring to K.H. as a victim of sexual assault by Mr. Haynes and Mr. Haynes as a victim of sexual abuse as a child by family members.   It is not clear whom the prosecutor was referring to as the third victim.

a motion for an order requiring the Wyoming State Hospital to conduct a sex offender risk assessment of Mr. Haynes. The district court granted the motion and the State Hospital conducted the risk assessment. After the State Hospital submitted its report, Mr. Haynes filed a motion for a new trial in which he claimed that the assessment raised a question concerning his competency to understand the nature of the proceedings and charges against him. He pointed specifically to a statement in the assessment indicating that he "functions at the level of a six or seven year old child." Mr. Haynes claimed this constituted newly discovered evidence entitling him to a new trial.[4]

[¶ 42] Prior to sentencing, the district court heard argument on the motion for new trial. The court concluded that the risk assessment contained nothing new concerning Mr. Haynes' competency to stand trial, the question of his mental status at the time of the offenses or the question of his guilt or innocence. The district court proceeded with the sentencing hearing and subsequently entered a written order denying the motion for new trial.

[¶ 43] On appeal, Mr. Haynes claims that when evidence was presented at sentencing indicating that he lacked the mental capacity to understand the nature of the sentencing proceedings, the district court was required to address the issue before sentencing him. Mr. Haynes relies on the following excerpt from the hearing, which he incorrectly attributes to the district court:

> The risk assessment itself was designed to consider what his chances of reoffending are. Not designed to determine whether or not he was competent to stand trial, not designed to determine whether or not he was responsible for his criminal conduct. In short, that report was directed at an entirely different set of issues, and does not constitute new evidence. *The case has been closed as to the issue of competency by the Court's determination that Mr. Haynes was competent to stand trial as a*

*matter of law. The issue of criminal responsibility has been closed by the jury by their guilty verdicts.*

(emphasis added). Citing § 7–11–303(a)[5], *deShazer v. State*, 2003 WY 98, ¶ 20, 74 P.3d 1240, 1248 (Wyo.2003), and other authorities, Mr. Haynes asserts this was a "glaring misstatement of the law" because it is clear that the district court had a continuing obligation throughout the legal proceeding, including sentencing, to raise and consider the issue of his mental competency.

[¶ 44] Mr. Haynes is correct that the district court had a continuing obligation to address the issue of his mental competency. However, the statement quoted above was not made by the district court; the statement was made by the prosecutor during his argument in opposition to the new trial motion. The record clearly reflects, contrary to Mr. Haynes' assertion, that the district court compared the statements contained in the risk assessment with the earlier testimony presented on the competency issue and found that no new evidence was presented. Mr. Haynes' argument that the district court did not fulfill its obligation and ruled the matter of competency "closed" is not supported by the record.

## CONCLUSION

[¶ 45] The State presented evidence from which a jury could reasonably conclude the victim in this case was asleep and, therefore, "physically helpless" as required under the first degree sexual assault statute. Mr. Haynes was not materially prejudiced by the prosecutor's improper comments during witness questioning and closing argument. The district court appropriately considered the issue of Mr. Haynes' mental competence throughout the proceedings, including sentencing.

[¶ 46] Affirmed.

---

4. W.R.Cr.P. 33(c) provides for a new trial based on newly discovered evidence.

5. § 7–11–303. Examination of accused to determine fitness to proceed; reports; commitment; defenses and objections.

(a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.