2008 WY 21

**Justin Drew JANPOL, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–07–0036.**

Supreme Court of Wyoming.

Feb. 28, 2008.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant was convicted of first-degree murder, in violation of Wyo. Stat. Ann. § 6–2–101(a) (LexisNexis 2007), and was sentenced to a term of life imprisonment

without the possibility of parole. His appeal raises issues about the jury instructions, about the presentence investigation report, and about the district court's denial of a motion for mistrial. We affirm.

## ISSUES

[¶ 2] 1. Whether the jury was properly instructed as to the procedure for considering the charged offense and lesser-included offenses?

2. Whether the presentence investigation report improperly contained confidential information?

3. Whether the district court abused its discretion in denying the appellant's motion for a mistrial?

## FACTS

[¶ 3] Most of the underlying events of this case are not relevant to the issues presented. Suffice it to say that late in the evening on November 2, 2005, in Casper, Wyoming, the appellant stabbed to death one David Maggiacomo. The homicide occurred after a long day of drinking and arguing amongst the appellant, the victim, and several other sometime residents of the Central Wyoming Rescue Mission. The appellant was charged with and convicted of first-degree murder, with the State seeking a maximum penalty of incarceration for life without the possibility of parole, rather than the death penalty. The district court imposed the requested sentence.

## DISCUSSION

### *Whether the jury was properly instructed as to the procedure for considering the charged offense and lesser-included offenses?*

[¶ 4] The jury was instructed as follows in regard to lesser-included offenses:

### INSTRUCTION NO. 12

YOU ARE INSTRUCTED that if you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged, if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.

The offense of Murder in the First Degree, with which the defendant is charged, also includes the lesser offenses of Murder in the Second Degree, Voluntary Manslaughter, Involuntary Manslaughter, and Criminally Negligent Homicide.

[¶ 5] That instruction, which is found in Wyoming's Pattern Criminal Jury Instructions, was offered both by the appellant and by the State, although the State listed only second-degree murder as a lesser-included offense. The district court gave the appellant's proposed version. Likewise, because it listed all of the potential lesser-included offenses, the district court also gave to the jury the verdict form proposed by the appellant, with some minor changes, which verdict form read as follows:

### VERDICT

We the jury, duly empaneled and sworn to try the above-entitled cause, do find as follows:

1. As to the charge of Murder in the First Degree, as charged in the Information in this case, we find the Defendant, Justin Drew Janpol:

_____ Not Guilty

_____ Not Guilty by Reason of Mental Illness or Deficiency

_____ Guilty

If you find the Defendant Not Guilty in # 1, then proceed to # 2. If you find the Defendant Not Guilty by Reason of Mental Illness or Deficiency or Guilty in # 1, do not answer # 2, # 3, # 4, or # 5.

2. As to the lesser included charge of Murder in the Second Degree, we find the Defendant, Justin Drew Janpol:

_____ Not Guilty

_____ Not Guilty by Reason of Mental Illness or Deficiency

_____ Guilty

If you find the Defendant Not Guilty in # 2, then proceed to # 3. If you find the Defendant Not Guilty by Reason of Mental Illness or Deficiency or Guilty in # 2, do not answer # 3, # 4, or # 5.

3. As to the lesser included charge of Voluntary Manslaughter, we find the Defendant, Justin Drew Janpol:

_____ Not Guilty

_____ Not Guilty by Reason of Mental Illness or Deficiency

_____ Guilty

If you find the Defendant Not Guilty in # 3, then proceed to # 4. If you find the Defendant Not Guilty by Reason of Mental Illness or Deficiency or Guilty in # 3, do not answer # 4, or # 5.

4. As to the lesser included charge of Involuntary Manslaughter, we find the Defendant, Justin Drew Janpol:

_____ Not Guilty

_____ Not Guilty by Reason of Mental Illness or Deficiency

_____ Guilty

If you find the Defendant Not Guilty in # 4, then proceed to # 5. If you find the Defendant Not Guilty by Reason of Mental Illness or Deficiency or Guilty in # 4, do not answer # 5.

5. As to the lesser included charge of Criminally Negligent Homicide, we find the Defendant, Justin Drew Janpol:

_____ Not Guilty

_____ Not Guilty by Reason of Mental Illness or Deficiency

_____ Guilty

When you have finalized your verdict(s), date and sign the verdict form and advise the Bailiff that you have reached a verdict.

DATED this _____ day of August, 2006

Presiding Juror

[¶ 6] The appellant does not now specifically appeal from the form of the verdict. Rather, this appellate issue is based upon the following colloquy that occurred during the State's rebuttal closing argument:

[PROSECUTOR]:....

They have also said put these side by side, do this, do that. One thing you'll notice from the instructions the judge gave you, you can only proceed to the lesser included offenses if you first find the defendant not guilty of the greater offenses. So you can't consider second until you determine whether he's guilty or not guilty of first and so on down the line. They want to say—

[DEFENSE COUNSEL]: Your Honor, I would object to that as a mischaracterization. It says after—you can consider everything, and then you go back to the verdicts. I don't think—again, there is no threshold requirement. It simply states that if you find the defendant not guilty of first-degree murder. I think that's a mischaracterization. They can certainly look at the other charges before making a decision.

[PROSECUTOR]: Your Honor, that's Wyoming law, and that's what a step verdict is.

THE COURT: I think the instructions speak for themselves. And to the extent that there's an objection, I guess my thought is that that's a matter of argument. But the instructions and the verdict form do address the order in which the jury is to consider the charges in this case, and you will be required to follow those steps or those forms that are expressed in the verdict. So you may proceed.

 [¶ 7] The appellant presents this issue as an instructional issue. The parties agree that we review such issues under the following standard:

Jury instructions shall not be ruled defective absent a showing that the instructions confused or misled the jury as to the proper principles of law and prejudiced the defendant. *Lane v. State*, 12 P.3d 1057, 1061 (Wyo.2000). Prejudicial error must be demonstrated, and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Wilson v. State*, 14 P.3d 912, 916 (Wyo.2000).

*Black v. State,* 2002 WY 72, ¶ 6, 46 P.3d 298, 300 (Wyo.2002). We have further defined our standard of review of jury instruction issues as follows:

> We have a well-established standard for review of jury instruction issues:
>
>> Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.
>
> *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001) (*citing Schmidt v. State,* 2001 WY 73, ¶ 23, 29 P.3d 76, 83 (Wyo.2001) and *Metzger v. State,* 4 P.3d 901, 908 (Wyo.2000)). We analyze jury instructions as a whole and do not single out individual instructions or parts thereof. *Ogden v. State,* 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo. 2001). We give trial courts great latitude in instructing juries and " 'will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at trial.' " *Id.* (*quoting Harris v. State,* 933 P.2d 1114, 1126 (Wyo.1997)).

*Brown v. State,* 2002 WY 61, ¶ 9, 44 P.3d 97, 100 (Wyo.2002).

■ [¶ 8] The first thing that has to be noted is that the appellant is not contesting any of the written instructions that were given, or the verdict form itself. Instead, he contends that the above-quoted colloquy constituted an "oral modification or explanation of a jury instruction," in violation of W.R.Cr.P. 30 which requires that jury instructions be in writing. Further, the appellant contends that the State's argument and the district court's response "[gave] precedence to the consideration of first degree murder over manslaughter or second degree murder." Finally, citing *Dean v. State,* 2003 WY 128, 77 P.3d 692 (Wyo.2003); *Yung v. State,* 906 P.2d 1028 (Wyo.1995); and *Black v. State,* 2001 OK CR 5, 21 P.3d 1047 (Okla. Crim.App.2001), the appellant argues that the prosecutor and the district court misstated the law by not allowing the jury to consider the lesser-included offenses concurrently with consideration of the charged offense.[1]

[¶ 9] We conclude that this allegation merits little discussion. To begin with, the colloquy, on its face, is not an instruction to the jury. As its comments applied to the instructions, all the district court said was, in effect, that the jury should follow the instructions and the verdict form. That hardly amended or contradicted the instructions as given, and we cannot conceive of any prejudice to the appellant resulting from the judge telling the jury to follow a verdict form *that was submitted by the appellant.* Furthermore, the verdict form was the type of "step verdict" that we approved in *Evanson v. State,* 546 P.2d 412, 415 (Wyo.1976), *superseded by statute/rule on other grounds as stated in Brown v. State,* 590 P.2d 1312, 1315 (Wyo.1979):

> The technique adopted by the trial judge in presenting included offenses to the jury is an accepted one. In *Fuller v. United States,* 1968, on rehearing, 132 U.S.App. D.C. 264, 407 F.2d 1199, 1227–1228, cert. den. 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125, the court discussed the doctrine of lesser included offenses and explained what it considered to be the proper procedure for presenting them to the jury:
>
>> "When a greater and lesser offense are charged to the jury, the proper course is

---

1. This may be a good point at which to note our frustration with the fact that the appellant's brief lacks any pinpoint (page) citations, requiring us to scour each case for the cited or quoted proposition.

to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to the guilt of the greater offense. A jury that finds guilt as to the greater offense does not enter a verdict concerning guilt of the lesser offense. The reason for this absence of consideration is not any inconsistency between the offenses. It rather reflects the very 'inclusion' that defines the lesser offense as one 'included' in the greater. * * *"

[¶ 10] The appellant's reliance upon *Dean* is misplaced. The appellant contends that *Dean* "allows the jury to consider all of the instructions as a whole and to debate the merits of the defense's assertions of manslaughter in tandem with the state's assertions of first degree murder." In truth, *Dean* is a case about when lesser-included offense instructions should be given, not a case about the order in which the jury should consider the evidence of the charged and included crimes. *Dean*, 2003 WY 128, ¶ 16, 77 P.3d at 697.

[¶ 11] Similarly misplaced is the appellant's reliance upon *Yung* for the proposition that the "existence of heat of passion has been recognized as a viable defense theory in Wyoming." While this statement superficially resembles the holding of *Yung*, it goes too far in suggesting that *Yung* prohibits the "step verdict" concept. The actual holding of *Yung*, in regard to this issue, was as follows:

> Yung argues that when a defendant is charged with second-degree murder and raises heat of passion as an affirmative defense, the State must prove that the killing was *not* accomplished in the heat of passion. In support of this argument, Yung cites, among other cases, *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We begin our analysis by noting that heat of passion is not normally referred to as an affirmative defense. *See* Black's Law Dictionary at 60 (6th ed.1990). In fact, in Wyoming, heat of passion is an element of the crime of voluntary manslaughter. *State v. Keffer*, 860 P.2d 1118, 1137 (Wyo.1993). Yung's apparent theory of the case is that he killed

Bennett in the heat of passion and is, therefore, guilty of voluntary manslaughter rather than second-degree murder. We will refer to Yung's heat of passion defense as a defense theory rather than as an affirmative defense.

> In *Mullaney*, the United States Supreme Court held that the Maine Supreme Judicial Court could not presume implied malice aforethought and require a defendant to prove, by a preponderance of the evidence, that he acted in a heat of passion in order to reduce a murder charge to manslaughter. *Mullaney*, 421 U.S. at 688, 703, 95 S.Ct. at 1884, 1892. Under this scheme, the defendant was essentially required to disprove an element of the crime. *Id.* at 702–03 n.31, 95 S.Ct. at 1891 n.31.

> *Mullaney* does not apply here because in Wyoming, the prosecution is required to prove, beyond a reasonable doubt, that the defendant acted with malice before the defendant can be convicted of second-degree murder. *Reeder v. State*, 515 P.2d 969, 971 (Wyo.1973). The prosecution must, of course, prove every element of a crime to garner a conviction. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

> Malice is an element of second-degree murder, but heat of passion is not. *Keffer*, 860 P.2d at 1137. If a defendant maliciously kills another human being, he may be convicted of second-degree murder. *Id.* at 1137–38. If, however, the defendant kills in a heat of passion, the crime is voluntary manslaughter, not second-degree murder. *Id.* at 1138. Thus, the two elements, malice and heat of passion, constitute the distinguishing factors that allow us to differentiate between second-degree murder and voluntary manslaughter. *Id.* at 1138–39. Proof of one negates the existence of the other.

> Thus, proof of malice negates a heat of passion theory. We hold that the prosecution need not disprove a heat of passion theory in a second-degree murder case because proof that the defendant acted maliciously nullifies that theory. *Id.*

*Yung*, 906 P.2d at 1035.

[¶ 12] *Evanson* and *Yung* are consistent with one another and consistent with

the way lesser-included offenses have traditionally been handled in jury verdicts in Wyoming. The central idea is that the State has charged a particular crime, and must prove each of its elements beyond a reasonable doubt. If that is done, the State has, *ipso facto*, proved the elements of the lesser-included offense. The opposite, however, is not true. Proof of the lesser-included offense does not, *ipso facto*, prove the greater offense. Only if the State fails to prove an element of the charged offense is there any necessity for the jury separately to consider whether the State has proved the related element of the lesser-included offense. In either event, the State retains the burden of proving the elements of the particular offense, beyond a reasonable doubt. In the process, it would not be logical to have the jury first consider whether the State had proven the elements of the lesser-included offense, then separately consider whether the State had proven the elements of the charged offense.

[¶ 13] Part of the error of the appellant's argument in this case is his presentation of heat of passion as a defense, rather than as an element of voluntary manslaughter. The argument that one is not guilty of the charged offense, but is only guilty of a lesser-included offense, is not the same as the argument that one is not guilty of the charged offense because of an affirmative defense, such as self-defense. A careful reading of *Black*, 21 P.3d at 1065–67, convinces us that the instructions in the instant case, when read together, did not confuse the jury as to the State's burden to prove all elements of the charged offense, or any of the lesser-included offenses, nor did the instructions in any way limit the jury's ability to consider the appellant's theory of defense; that is, that he was guilty only of voluntary manslaughter. The instructions clearly distinguished among the crimes, defined the terms that differentiated them, and informed the jury that the State bore the burden of proof in regard to each crime.

### *Whether the presentence investigation report improperly contained confidential information?*

[¶ 14] Wyo. Stat. Ann. § 7–13–407(a)(ii) (LexisNexis 2007) directs probation and parole agents to "[i]nvestigate all cases referred by any court, . . . and report to the court, . . . in writing[.]" W.R.Cr.P. 32(a) governs the preparation of the report, and dictates its contents. As to the confidentiality of the information collected in the process, Wyo. Stat. Ann. § 7–13–409 (LexisNexis 2007) provides as follows:

> All information and data obtained in the discharge of official duties by probation and parole agents is privileged information and shall not be disclosed directly or indirectly to anyone other than to the judge, the department or to others entitled to receive reports unless and until otherwise ordered by the judge, board or department.

Wyo. Stat. Ann. § 7–13–1302 (LexisNexis 2007) requires, in pertinent part, that any person convicted of a felony "shall receive, as a part of a presentence report, a substance abuse assessment."

[¶ 15] On August 30, 2006, the district court ordered that a presentence investigation be conducted and that such should include a substance abuse assessment pursuant to Wyo. Stat. Ann. § 7–13–1302. The presentence investigation report (PSI) was filed on October 12, 2006. The appellant objected to the PSI and asked that a new report be completed, on the ground that the information provided by the person conducting the substance abuse assessment went far beyond the purpose of the statute—the determination of whether a defendant needed alcohol or drug treatment—and contained comments made by the appellant, as well as impressions formed by the evaluator, that negatively affected the sentencing recommendations of the probation and parole agent conducting the investigation. Further, the appellant contended that, by submitting information beyond that necessary for the evaluation report, the PSI violated the rules of the Wyoming Department of Health and federal confidentiality statutes. The State's response to the appellant's motion emphasized the fact that the allegedly confidential information, mostly having to do with the appellant's violent tendencies, was relevant to the evalu-

ator's report, and therefore not confidential, because it was necessary information for identifying and recommending an appropriate treatment program. In addition, the State contended that the appellant had signed a release, authorizing the sharing of the information with the probation and parole agent, and a copy of the release is attached to the State's response.

■ [¶ 16] Both the appellant and the State contend that this Court should review this "sentencing decision" for an abuse of discretion. *See Gorseth v. State,* 2006 WY 109, ¶ 15, 141 P.3d 698, 703 (Wyo.2006); and *Doherty v. State,* 2006 WY 39, ¶ 30, 131 P.3d 963, 972 (Wyo.2006). We perceive, however, that this issue primarily revolves around the interpretation and application of the Addicted Offender Accountability Act, Wyo. Stat. Ann. § 7–13–1301, *et seq.* (LexisNexis 2007), which is a question of law that we review *de novo. Alcorn v. Sauer Drilling Co.,* 2006 WY 15, ¶ 6, 126 P.3d 924, 925 (Wyo.2006); *Reiter v. State,* 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001).

[¶ 17] The question of statutory construction arises out of two separate sections of the Addicted Offender Accountability Act. Wyo. Stat. Ann. § 7–13–1301(a)(v) (LexisNexis 2007), reads as follows:

(v) "Substance abuse assessment" means an evaluation conducted by a qualified person using practices and procedures approved by the department of health to determine whether a person has a need for alcohol or other drug treatment and the level of treatment services required to treat that person[.]

[¶ 18] In turn, Wyo. Stat. Ann. § 7–13–1304 (LexisNexis 2007) reads as follows:

If a person has been convicted of a violent felony or delivery or unlawful manufacture of a controlled substance under W.S. 35–7–1031, there is a rebuttable presumption that the person is not a "qualified offender" for purposes of sentencing under this act. This presumption may be rebutted by clear and convincing evidence that the person who is an otherwise qualified offender convicted of a violent felony could participate in a treatment program without posing an unreasonable risk to the safety of the public. As to persons convicted of manufacture or delivery of a controlled substance, the presumption may be rebutted by clear and convincing evidence that the person committed the crime because of his own dependency.

[¶ 19] It is the thrust of the appellant's argument that, because he was convicted of committing a violent felony, he was not a qualified offender under the Act, and that, therefore, the information provided by the evaluator could not have met the purpose of the Act—to provide treatment. Further, the appellant contends that statements he made to the evaluator about his past, or about possible violent acts in the future, were not related to any drug or alcohol treatment, and were, therefore, inadmissible at sentencing.

■ [¶ 20] We believe the appellant reads the Act too narrowly. The purpose of the Act is not just to identify any alcohol or drug problem that an offender may have, or even just to identify a treatment plan that may help the offender. Rather, the unambiguous purpose of the Act, as set forth in Wyo. Stat. Ann. § 7–13–1304, is to determine whether an offender "could participate in a treatment program *without posing an unreasonable risk to the safety of the public.*" (Emphasis added.) The information contained in the evaluator's report to the probation and parole officer, which information related directly to the appellant's propensity for violence, was meant to be related to the district court because it was indispensable in deciding whether treatment options should be considered as part of any sentence.[2] Consequently, the district court did not err, as a

---

2. This substance abuse evaluation is known as the Addiction Severity Index (ASI). Recently, one of the creators of the ASI reported that health and social factors, including psychiatric information, are essential information for fully evaluating the potential success of substance abuse treatment. *See* A. Thomas McLellan, *et al., The Addiction Severity Index at 25: Origins, Contributions, and Transitions,* 15 Am. J. Addiction, 113–24 (2006), Issue 2, available at http://www.tresearch.org/resources/pubs/ASIat25.pdf.

matter of law, in considering that information.[3]

### *Whether the district court abused its discretion in denying the appellant's motion for a mistrial?*

[¶ 21] "We review claimed error in the denial of a motion for mistrial for abuse of discretion." *Martin v. State*, 2007 WY 2, ¶ 11, 149 P.3d 707, 710 (Wyo.2007).

> The decision [whether to grant a mistrial] is necessarily a discretionary one because a trial court is in a better position than a reviewing court to assess the potential for prejudicial impact. [*Ramirez v. State*, 739 P.2d 1214, 1219 (Wyo.1987).] A trial court abuses its discretion when it could not have reasonably concluded as it did. *Thomas* [*v. State*, 2006 WY 34], ¶ 10, 131 P.3d [348], 352 [ (Wyo.2006) ]. "Reasonably" means sound judgment exercised with regard to what is right under the circumstances. *Id.* Absent a clear abuse of discretion causing prejudice to the defendant, a decision to deny a motion for mistrial will not be reversed. *Allen v. State*, 2002 WY 48, ¶ 75, 43 P.3d 551, 575 (Wyo. 2002).

*Id.*, 2007 WY 2, ¶ 19, 149 P.3d at 712.

[¶ 22] The motion for mistrial in this case was made in chambers after the State's initial closing argument. During that closing argument, the following exchange occurred:

> [PROSECUTOR]: Not only do both psychiatrists give—and remember it's their burden of proof here. They put on two psychiatrists both that say he doesn't meet that standard, and yet they want you to find him not guilty and walk him because he has—
>
> [DEFENSE COUNSEL]: Your Honor, I would object.
>
> [PROSECUTOR]: —a problem with mental illness.
>
> [DEFENSE COUNSEL]: I would object to the comment about walking him.

That goes to punishment and it's totally inappropriate.

> [PROSECUTOR]: I'll rephrase, Your Honor.
>
> THE COURT: I will sustain the objection. Go ahead.

[¶ 23] The district court called a recess after the State finished its argument, and counsel went into chambers. Defense counsel then moved for a mistrial on the ground that the prosecutor's comment about "walking" the defendant was misleading and inappropriate, and especially damaging in view of discussions during *voir dire* about there not being any consequences for a mental illness conviction. The district court denied the motion for a mistrial, but agreed to, and did, admonish the jury as follows before defense counsel began his closing argument:

> THE COURT: .... Ladies and gentlemen of the jury, during the State's final argument, there was a singular objection to the State's presentation. There was an objection to a comment that was made in connection with that final argument, and I would remind the ladies and gentlemen of the jury that the Court did sustain the objection. And that means that the jury should disregard that portion of the State's argument and the comment to which the objection was sustained. I would also advise the ladies and gentlemen of the jury, as I did in the instructions in this case, that the question of possible punishment of the defendant is of no concern to the jury and should not in any sense enter into or influence your deliberations.
>
> So please keep that in mind. And I would emphasize that in the context of the objection that was sustained in this matter.

[¶ 24] We have frequently applied the abuse of discretion standard in cases involving motions for mistrial based upon alleged prosecutorial misconduct in closing argument. A sampling of those cases reflects the tenet that "[g]ranting a mistrial is an extreme and drastic remedy that should

---

**3.** Having reached this conclusion, we need not determine the validity of the Consent for the Release of Confidential Information executed by the appellant prior to his assessment. Suffice it to say that it is a very thorough, two-page document, specifically referring to various federal confidentiality statutes, and specifically identifying "inclusion in the Pre–Sentence Investigation Report" as one of its purposes.

be resorted to only in the face of an error so prejudicial that justice could not be served by proceeding with trial." *Cazier v. State,* 2006 WY 153, ¶ 16, 148 P.3d 23, 29 (Wyo. 2006) (quoting *Allen v. State,* 2002 WY 48, ¶ 75, 43 P.3d 551, 575 (Wyo.2002)). *See Sanchez v. State,* 2002 WY 31, ¶ 20, 41 P.3d 531, 536 (Wyo.2002) (denial of mistrial motion affirmed where improper statement not unduly prejudicial and curative instruction given); *Marquez v. State,* 12 P.3d 711, 718 (Wyo. 2000) (denial of mistrial motion affirmed where isolated and brief improper statement did not make fair trial impossible, objection was sustained, and amount of direct evidence made conviction likely at any rate); *Wolfe v. State,* 998 P.2d 385, 389 (Wyo.2000) (denial of mistrial motion affirmed where brief incident of prosecutorial emotion during closing argument was not prejudicial, in context of entire argument and overwhelming evidence of guilt); *Miller v. State,* 955 P.2d 892, 898 (Wyo.1998) (denial of mistrial motion affirmed where any possible prejudice that may have resulted from a questionably improper comment was cured by a cautionary instruction); *DeSersa v. State,* 729 P.2d 662, 666 (Wyo.1986) (denial of mistrial motion affirmed where prosecutor's statement in closing argument had potential of attempting to shift burden of proof, but possible error averted by district court's curative instruction).[4]

[¶ 25] Having reviewed the transcript of the trial, and considering the prosecutor's single comment in the context of all the testimony and the entire closing arguments, we conclude that the district court did not abuse its discretion in denying the appellant's motion for a mistrial. While the prosecutor's suggestion that the appellant would "walk" if found not guilty by reason of mental illness was improper, the error was promptly corrected by a sustained objection and a curative instruction. Given the totality of the circumstances then existing, including the nature and amount of the evidence, the well-instructed jury, the brief single-word misconduct, and the immediate curative action taken by the district court, the drastic remedy of mistrial was not appropriate. Counsels' closing arguments take up 72 pages of transcript. The entire trial transcript is 1358 pages in length. In the midst of all this, it is highly unlikely that the prosecutor's misuse of a single word affected the outcome of the trial, especially where the jury was contemporaneously instructed to ignore the word, and where the written instructions told the jury that statements made by counsel in argument were not evidence.

## CONCLUSION

[¶ 26] The jury verdict and the district court's judgment and sentence are affirmed in all respects. The jury was properly instructed in regard to the consideration of lesser-included offenses, no confidential information was improperly included in the PSI, and the prosecutor's misconduct during closing argument did not warrant a mistrial.

[¶ 27] Affirmed.

---

4. *But see Gayler v. State,* 957 P.2d 855, 862 (Wyo.1998), where a conviction was reversed because of blatant and repeated prosecutorial calls for a guilty verdict based upon passion and community outrage, rather than the evidence. This case may be an anomaly, as pointed out by Justice Thomas in his dissent, inasmuch as defense counsel objected to the prosecutor's repeated statements, those objections were sustained, and no motion for mistrial was filed. In effect, Gayler appealed from favorable rulings. *Id.,* 957 P.2d at 862 (Thomas, J., dissenting).