# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 72

APRIL TERM, A.D. 2016

July 18, 2016

BRANDON FREDERICK WIESE,

Appellant
(Defendant),

v.

S-15-0261

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
   Office of the State Public Defender:  Diane Lozano, State Public Defender; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
   Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; James M. Causey, Senior Assistant Attorney General; John A. Brodie, Assistant Attorney General.  Argument by Mr. Causey.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    Appellant Brandon Wiese was convicted of one count of burglary.  Wiese argues on appeal that he was prejudiced by the admission of what he contends was uncharged misconduct evidence.  He also claims that prosecutorial misconduct occurred during closing argument.  He contends that his conviction should be reversed for these reasons. We affirm.

## ISSUES

[¶2]    1.    Was Wiese prejudiced by the introduction of uncharged misconduct evidence?

2.    Did the State commit prosecutorial misconduct rising to the level of plain error?

## FACTS

[¶3]    On December 17, 2014, a housekeeper employed by the Holiday Inn of Cheyenne[1] called the front desk to report that a man was harassing the hotel staff on the fifth floor. The housekeeper believed he was in Room 527.  Front desk employees reviewed their records and found that Room 527 was registered to a woman who appeared to have already checked out.  The hotel's branch office manager called Room 527, and a man answered the telephone.  With slurred speech, he agreed to come to the front desk to sort out room arrangements as the manager requested.

[¶4]    Soon thereafter, hotel staff in the lobby area saw a man they suspected to have been in Room 527 come downstairs.  The hotel's human resources manager, who had been alerted to the situation, noticed that he "was acting very erratically" and appeared to be out of place.  Instead of coming to the front desk, he went to the bar to order a drink. The human resources manager instructed the bartender not to allow him to make any charges to a room, because she didn't think he had one.  Now needing cash to pay, he went to an ATM in the lobby area, after which, however, he went back upstairs instead of returning to the tavern.  At that point, the front desk staff called police.

[¶5]    Three Cheyenne Police Department officers responded to the call.  They encountered Wiese in the hallway immediately upon reaching the fifth floor.  Detective Kniss and Officer Fernandez approached and began speaking with him.  He smelled like alcohol and acted intoxicated, and his hands were covered with a black residue.  For their own safety, the officers patted Wiese down and discovered a small and nearly empty bottle of whiskey.  When they asked Wiese what he was doing at the hotel, he told them

---

[1] The hotel has since become affiliated with another chain.

1

that a friend had paid for a room so that he could stay in the hotel, but he was unable to provide the friend's name.

[¶6] Meanwhile, Officer Serkerka entered Room 527 with a hotel manager and spotted a black duffel bag stashed behind the sofa. The bag contained, among other things, bottles of pills prescribed to a Donald Gregory. Detective Kniss joined Officer Serkerka in Room 527 and they found an opened gunpowder container with its contents partially spilled onto the counter and floor of the bathroom. The gunpowder appeared to be the same black residue they had seen on Wiese's hands. The room also reeked of cologne.

[¶7] While Room 527 was being searched, hotel staff notified the officers that the guest across the hall in Room 526 had reported his bag missing. Officer Sekerka took the duffel bag to Room 526, and the guest, the same Donald Gregory whose name appeared on the pill bottles, identified it as the bag that had disappeared from his room. He also claimed the gunpowder and the cologne wafting through the air in Room 527. Officers then placed Wiese under arrest.

[¶8] At one point, either during the initial pat down or at the time of his arrest, officers also found keycards to various hotels in Wiese's pocket. Several keycards belonged to the Holiday Inn. The day after Wiese's arrest, a Holiday Inn manager went to Room 527 and discovered more keycards and a housekeeping smock from a different hotel.

[¶9] Wiese was charged with two counts of burglary under Wyo. Stat. Ann. § 6-3-301(a) (LexisNexis 2013) for unlawfully entering Rooms 526 and 527 at the Holiday Inn.[2] At Wiese's preliminary hearing, the circuit court dismissed the burglary count related to Room 527 because the State failed to prove probable cause to support the charge. The case was bound over to district court, and Wiese pled not guilty to the remaining burglary charge associated with the bag taken from Room 526.

[¶10] Prior to trial, Wiese filed a *Demand for Notice of State's Intent to Use Evidence Pursuant to Wyoming's Rule of Evidence 404(b)*. The State did not provide notice that it intended to use Rule 404(b) evidence at trial, and consequently the district court did not hold a hearing on that issue. The evidence now claimed to be subject to Rule 404(b) and improperly received consists of the keycards and the smock.

[¶11] The evidence presented at trial is reflected in the statement of facts above. The State's theory was that Wiese entered the hotel and went to the fifth floor, where he likely found the door to Room 527 propped open by housekeeping staff. The previous guest in that room had checked out without coming to the front desk, and the State hypothesized

---

[2] Wyo Stat. Ann. § 6-3-301(a) provides that "[a] person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit theft or a felony therein." Burglary is a felony punishable by up to ten years in prison and a ten thousand dollar fine. Wyo. Stat. Ann. § 6-3-301(b).

that she left her keycard, which was still activated, so that after taking it Wiese could come and go from that room as a base of operations. The keycards found on his person were scanned, and one which would open Room 527 was still active.

[¶12] Housekeeping staff had a practice of propping the doors of blocks of rooms to be cleaned open with the security latchs. In the State's view, Wiese would then have been able to enter Room 526 and steal the bag which he then took to 527, and he could have pilfered other rooms in the same way.

[¶13] The keycards were mentioned in the State's opening statement as well as in the testimony of three Holiday Inn employees and two police officers. The smock was mentioned in the testimony of one employee. All were mentioned in the State's closing argument.[3] Wiese's counsel did not object to the opening statement or testimony concerning the keycards and smock.

[¶14] Wiese exercised his constitutional right not to present evidence or to testify. His attorney contended from the outset that he was so intoxicated when he entered or was present in Room 526 that he could not have formed the specific intent to commit theft, which was required to convict him of the burglary charge. Counsel argued that he was instead "a drunk idiot acting stupid," and that he should be convicted of the lesser-included misdemeanor of criminal entry, which does not require proof of intent to steal.[4]

[¶15] In closing, the prosecutor argued that Wiese was able to and did form the specific intent required to convict him of burglary. He pointed out that he occupied Room 527, then entered Room 526 without permission, took the duffel bag from that room and hid it behind the couch in 527, harassed the housekeepers, and lied to officers about his right to occupy 527. The prosecution also pointed out that possession of a stack of keycards and a housekeeping smock was not consistent with an unplanned entry into Room 526. The prosecutor ended his summation by exhorting the jury to "[h]old him accountable, or he will laugh his way out of this courtroom." Defense counsel did not object to this remark or ask for an instruction directing the jury to disregard it.

---

[3] Defense counsel pointed out during the State's closing that these items had not been received in evidence. The court held that the prosecution could refer to the testimony about them. This decision has not been challenged on appeal.

[4] Wyo. Stat. Ann. § 6-3-302(a) (LexisNexis 2013) provides as follows:

> (a)    A person is guilty of criminal entry if, without authority, he knowingly enters a building, occupied structure, vehicle or cargo portion of a truck or trailer, or a separately secured or occupied portion of those enclosures.

Criminal entry is a misdemeanor punishable by no more than six months in jail and a $750 fine. Wyo. Stat. Ann. § 6-3-302(c).

[¶16] Wiese was found guilty of the single burglary charge and sentenced to eighteen to thirty-six months in prison. He timely perfected this appeal.

## DISCUSSION

### *Prejudice from the Introduction of Keycards and Smock*

[¶17] Wiese claims he was prejudiced by the State's introduction of the keycards and the smock. He contends that these items were uncharged misconduct evidence falling under Wyoming Rule of Evidence 404(b), and that they were never subjected to a 404(b) analysis before trial because the State did not provide notice that it intended to offer evidence governed by the rule.[5] Rule 404(b) provides as follows:

> (b) *Other crimes, wrongs, or acts*. – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

W.R.E. 404(b).

[¶18] Evidently neither of the attorneys below nor the trial judge considered the keycards and smock to be 404(b) evidence. An argument could have been made that some or all of these items were direct evidence which did not fall within 404(b)—certainly, at a minimum, the keycard to Room 527 was directly relevant to prove that Wiese was in that room as the State's theory suggested. However, the State chose not to raise this issue and instead narrowly argues that admitting this evidence was not prejudicial. Thus, we will treat the evidence as if it were within the scope of Rule 404(b), which leads to an analysis which may seem to be a bit artificial.

[¶19] We consider Wiese's demand for notice of the State's intent to use 404(b) evidence a timely objection to the challenged testimony, and so we are not limited to plain error analysis. *Griggs v. State*, 2016 WY 16, ¶ 128, 367 P.3d 1108, 1143 (Wyo. 2016) (citing *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002)). We

---

[5] In its pretrial memo, the State listed five Holiday Inn keycards and three miscellaneous keycards. The listed cards were not actually received in evidence, but as noted above, there was testimony about them.

4

generally review a decision to receive 404(b) evidence for an abuse of discretion. *Id.* at 129 (citing *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206-07 (Wyo. 2007)).

[¶20]  When a district court decides whether to receive 404(b) evidence, it must test it using the following general criteria:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id.* (citing *Vigil v. State*, 926 P.2d 351, 357 (Wyo. 1996); *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002)).  We have also held that "[e]ven if a district court abused its discretion in admitting uncharged misconduct evidence, we must also determine whether the error was prejudicial." *Hodge v. State*, 2015 WY 103, ¶ 8, 355 P.3d 368, 371 (Wyo. 2015) (quoting *Mersereau v. State*, 2012 WY 125, ¶ 17, 286 P.3d 97, 106 (Wyo. 2012)).

[¶21]  Because of the posture of this appeal, we consider only whether receiving the evidence was prejudicial.  Receiving Rule 404(b) evidence is prejudicial where "there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Payseno v. State*, 2014 WY 108, ¶ 20, 332 P.3d 1176, 1182 (Wyo. 2014) (citation omitted).

[¶22]  In a burglary case, the State must prove that a person entered an enclosure without authority and with the "intent to steal or commit another felony beyond a reasonable doubt." *Jennings v. State*, 806 P.2d 1299, 1303 (Wyo. 1991).  However, direct evidence of intent to steal is not required.  *Toth v. State*, 2015 WY 86A, ¶ 16, 353 P.3d 696, 703 (Wyo. 2015).  A jury may infer the defendant's intent to steal based on the totality of the circumstances reflected by the evidence.  *Lane v. State*, 12 P.3d 1057, 1063 (Wyo. 2000).

[¶23]  The record leaves no doubt that Wiese entered a hotel room in which he had no legitimate business.  He occupied Room 527 for a time, and he concealed a bag taken from Room 526 behind the sofa in that room.  The fact that he concealed the bag suggests that he did not want to be seen in possession of it.  The jury could infer, as the State suggested that it should, that he planned to use Room 527 as a base of operations, pilfering other rooms left open, and then stash the fruits of his labors there.  When confronted by police officers, Wiese concocted a story that he lawfully occupied a room, and that story was shown to be false.  A defendant's attempts to conceal a crime can demonstrate intent to steal.  *Dennis v. State*, 2013 WY 67, ¶ 31, 302 P.3d 890, 896-97

(Wyo. 2013) (finding defendant guilty of aggravated burglary, having formed the intent to deprive as established by circumstantial evidence that he sought to conceal his theft of a pistol). Such attempts are no less probative of the ability to form the intent to steal.

[¶24] Wiese's defense relied upon persuading a jury that he was so intoxicated that he could not appreciate that he was taking someone else's property. The evidence, excluding that challenged in this appeal, showed some level of planning and consciousness of guilt. A jury could reasonably conclude that although Wiese was not completely sober, he was able to form the requisite intent. Wiese has the burden of proving prejudicial error, *see Bromley v. State*, 2009 WY 133, ¶ 24, 219 P.3d 110, 116-17 (Wyo. 2009), and he has failed to do so.

### *Prosecutorial Misconduct in Closing Argument*

[¶25] In his second issue, Wiese contends that the State committed prosecutorial misconduct when the prosecutor stated in closing that the jury must hold Wiese "accountable, or he will laugh his way out of this courtroom." Wiese did not object to this statement or ask for a curative instruction, and we therefore can only review for plain error. *Ortiz v. State*, 2014 WY 60, ¶ 104, 326 P.3d 883, 903 (Wyo. 2014).

[¶26] We apply the following requirements for plain error: "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Id.* The record clearly reflects the alleged prosecutorial misconduct, which satisfies the first part of the test.

[¶27] The second component requires proof that the prosecutor violated established law. *Id.* As we have observed:

> In an often quoted opinion, the United States Supreme Court stated that a prosecutor should prosecute with earnestness and vigor but "while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Determining the location of the line between fair and foul requires reference to the underlying reasons for limiting argument of counsel.

*Barela v. State*, 787 P.2d 82, 83 (Wyo. 1990).

[¶28] In an effort to help prosecutors and judges find that sometimes elusive line between fair and foul, we have described certain governing principles:

(a)     The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b)     It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c)     The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d)     The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

(e)     It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.

*Trujillo v. State*, 2002 WY 51, ¶ 5, 44 P.3d 22, 24-25 (Wyo. 2002). "Closing arguments should not be designed to inflame the passion and prejudice of the jury." *Barela,* 787 P.2d at 85.

[¶29]  A statement that the jury must find the accused guilty in order to follow their oath is improper. *Wilks v. State,* 2002 WY 100, ¶ 28, 49 P.3d 975, 987 (Wyo. 2003). However, in *Wilks,* this Court found the comment "Do your duty, please, and find the Defendant guilty," viewed in context, was not improper because the prosecutor did not suggest that the jury could perform its duty only by finding the accused guilty. *Id.*

[¶30]  In *Janpol v. State,* 2008 WY 21, 178 P.3d 396 (Wyo. 2008), we concluded that a prosecutor's statement in closing that "they want you to find him not guilty and walk him" was improper. However, because the error was promptly corrected by a sustained objection and a curative instruction, we held that the district court properly denied a motion for mistrial. *Id.* ¶ 25, 178 P.3d at 405; *see* Jacob A. Stein, *Closing Arguments* § 1:91 (2015-2016 ed.). Unlike the prosecutor in *Wilks*, the prosecutor in *Janpol* focused on punishment.

[¶31]  In this case, the prosecutor insinuated that if the jury accepted Wiese's defense, he would avoid punishment and walk out of the courtroom free, which is similar to the

statement made in *Janpol*.[6] The further comment that the defendant would "laugh his way out" of the courtroom implied both that the defendant knew he was guilty and that the jury would become a laughingstock unless it convicted him of burglary, which is another way of saying that the only way it could do its duty was to convict of burglary. We must therefore conclude that this comment, brief though it was, crossed the line into foul territory and violated a clear rule of law.

[¶32] Turning to the third and final element of plain error, we must determine whether the error deprived Wiese of a substantial right and was thus unduly prejudicial before we will reverse the jury's verdict. *Ortiz*, ¶ 104, 326 P.3d at 903. "[W]e must evaluate these comments in the context of the entire argument, and with reference to the entire record. *Hill v. State*, 2016 WY 27, ¶ 47, 371 P.3d 553, 566 (Wyo. 2016). "Reversal as a result of prosecutorial misconduct is not warranted unless a reasonable probability exists that absent the error the defendant may have enjoyed a more favorable verdict." *Id.* ¶ 59, 371 P.3d at 568.

[¶33] Wiese argues that the prosecutor's "laugh his way out of the courtroom" statement influenced the jury's decision because they would not want to be taken for fools, swindled, or mocked by Wiese if they returned a verdict of not guilty or guilty of criminal entry. However, the impact of the prosecutor's remark is slight when considered in the context of the entire trial record, for reasons that we explained in the section dealing with receipt in evidence of the keycards and the housekeeping smock. The prosecutor's one-liner, although improper, came in the face of extensive evidence of Wiese's guilt of burglary. We cannot find that he would have received a more favorable verdict if the comment had not been made, and the comment thus does not constitute plain error requiring reversal.

[¶34] Affirmed.

---

[6] This proposition must be viewed in light of the fact that Wiese's attorney didn't argue that he shouldn't be convicted of anything – he argued for a conviction of misdemeanor criminal entry. The prosecutor was arguing that anything less than a finding of guilt on the burglary charge, which carried a much more severe sentence, would be laughable.