# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 112

### OCTOBER TERM, A.D. 2025

#### October 10, 2025

JASON SCOTT BRAGDON,

Appellant
(Defendant),

v.                                                            S-25-0069

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable Darci A.V. Phillips, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel

*Representing Appellee:*
> Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Sierra A. Burleigh, Student Intern

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and OVERFIELD, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**OVERFIELD, District Judge.**

[¶1]     A jury convicted Jason Scott Bragdon of felony stalking.  Mr. Bragdon argues on appeal that the district court abused its discretion when it admitted a text message and recorded statement under W.R.E. 404(b) that referred to going back to prison.  We affirm.

## *ISSUE*

[¶2]     We rephrase the issue as:

> Whether the district court abused its discretion when it held Mr. Bragdon's text message and recorded statement about going back to prison were admissible under W.R.E. 404(b).

## *FACTS*

[¶3]     In 2023, Mr. Bragdon married Helene Reimers.  The two remained married for six months.  On September 6, after a brief time living together, Ms. Reimers "kicked" Mr. Bragdon out of the house during a verbal altercation.  Afterward, Mr. Bragdon regularly stopped by the house and called Ms. Reimers, leaving voicemails where he was "very hostile, yelling, [and] calling [Ms. Reimers] names."  He also texted, emailed, and direct messaged Ms. Reimers with a mix between nice and mean statements.  On October 8, Ms. Reimers served Mr. Bragdon with divorce paperwork.  Mr. Bragdon increased his attempts to contact her and began driving past her mother's house when he knew Ms. Reimers would be there attending Sunday dinner.  He also frequently drove by her house, circled it, and occasionally stopped by and knocked on her door.  Ms. Reimers later testified that if she did not answer the door, Mr. Bragdon would bang on the door, yell, and call her while he stood on the porch.

[¶4]     On October 21, Mr. Bragdon was "blowing up" Ms. Reimers' phone when he saw her heading home after getting food.  Mr. Bragdon followed her to the house but, once there, Ms. Reimers ran inside and locked the door.  He repeatedly banged on the door, yelled "[o]pen the f**king door," and eventually broke a slab on the door and got his fingers stuck in it.  Mr. Bragdon left after Ms. Reimers threatened to call the police.  He continued to send her threatening text messages.

[¶5]     On October 27, Ms. Reimers spotted Mr. Bragdon parked across the street by her house and later driving around her neighborhood.  Mr. Bragdon had been continuously texting, calling, and leaving voicemails on her phone.  A string of the text messages stated: "I have nothing to lose. So remember that.  I will go back to prison.  I don't give a f**k anymore.  Nothing for me here like you said.  So why keep living.  And I will die before I go back."  Ms. Reimers called the police.  An officer with the Sheridan Police Department responded.  Ms. Reimers showed the officer the text messages, voicemails, the damage to

1

her front door, and pictures she took of Mr. Bragdon parked across the street and driving by. While Ms. Reimers spoke with the officer, Mr. Bragdon called her phone and she permitted the officer to answer it. The officer answered, introduced himself, and asked to meet with him. Mr. Bragdon agreed to meet with the officer and provided him with his address. The officer met Mr. Bragdon at his house and captured the conversation on his body camera. During their conversation, Mr. Bragdon stated: "I don't know why I can't be left with a warning on this . . . I know to leave her alone now. . . I may lose my job. I may go back to prison."

[¶6]    In January 2024, the State charged Mr. Bragdon with one count of felony stalking under Wyo. Stat. Ann. § 6-2-506(b) and (e)(i) due to his previous conviction for stalking in January 2022.[1]  Mr. Bragdon filed a written demand for notice of the State's intent to use W.R.E. 404(b) evidence. The State complied with the demand and filed a notice of intent to admit such evidence and a supplemental notice clarifying which evidence it intended to introduce. Specifically, the State sought to introduce under W.R.E. 404(b) evidence of Mr. Bragdon's prior stalking conviction, several text messages Mr. Bragdon sent to Ms. Reimers, including the messages that refer to him being on parole for stalking, Ms. Reimers' testimony referring to these messages, and three video recorded statements

---

[1] Wyo. Stat. Ann. § 6-2-506. Stalking; penalty

> (b) Unless otherwise provided by law, a person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:
> (i) Communicating, anonymously or otherwise, or causing a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses;
> (ii) Following a person, other than within the residence of the defendant;
> (iii) Placing a person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant;
> (iv) Using any electronic, digital or global positioning system device or other electronic means to place another person under surveillance or to surveil another person's internet or wireless activity without authorization from the other person; or
> (v) Otherwise engaging in a course of conduct that harasses another person.
> . . . .
>
> (e) A person convicted of stalking under subsection (b) of this section is guilty of felony stalking punishable by imprisonment for not more than ten (10) years, if:
> (i) The act or acts leading to the conviction occurred within five (5) years of the completion of the sentence, including all periods of incarceration, parole and probation, of a prior conviction under this subsection, or under subsection (b) of this section, or under a substantially similar law of another jurisdiction[.]

from the officer's body camera where Mr. Bragdon admits sending the text messages, refers to being on parole, and states he may go back to prison. The State asserted it sought to introduce this evidence for the purpose of showing Mr. Bragdon's intent, motive, and guilty mind. Mr. Bragdon responded to the State's notice and also filed a motion in limine to bar portions of the video recordings.

[¶7]   In September 2024, the district court held a hearing on the motions. After hearing from the parties, the court performed a *Gleason*[2] analysis and orally ruled that it would admit under W.R.E. 404(b) the text message where Mr. Bragdon stated, "I will go back to prison." The court took the rest of the noticed evidence under advisement. Later the same day, the court made an oral ruling, concluding it would not permit the State to introduce Ms. Reimers' testimony regarding her knowledge of Mr. Bragdon's prior conviction or the two video recorded statements also referring to the prior conviction. However, after another *Gleason* analysis, the court concluded it would admit the body camera footage where Mr. Bragdon states, in part, that he "may go back to prison." The court stated it would issue a limiting instruction upon Mr. Bragdon's request. The next day, the court entered a written order incorporating its holdings from the hearing.

[¶8]   In October 2024, the district court held a two-day jury trial. The State presented three witnesses, including Ms. Reimers and the officer, and admitted several exhibits such as Mr. Bragdon's text and recorded statements referring to his prior stay in prison. Mr. Bragdon did not present a defense or request a limiting instruction for the evidence admitted under W.R.E. 404(b). The jury found him guilty of felony stalking. The district court sentenced Mr. Bragdon to four to eight years of incarceration. Mr. Bragdon appealed.

## DISCUSSION

[¶9]   Mr. Bragdon filed a pretrial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b). This Court treats the demand as an objection and will review the district court's admission of such evidence for an abuse of discretion. *Dickerson v. State*, 2025 WY 26, ¶ 26, 564 P.3d 587, 594 (Wyo. 2025) (citation omitted). "We need only determine whether the court could have reasonably concluded as it did." *Freer v. State*, 2023 WY 80, ¶ 11, 533 P.3d 897, 901 (Wyo. 2023) (citation omitted).

[¶10]  W.R.E. 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

---

[2] *Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342–43 (Wyo. 2002).

or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[¶11]   A core principle of W.R.E. 404(b) "is that the defendant in a criminal case should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." *Freer*, 2023 WY 80, ¶ 13, 533 P.3d at 902 (quoting *Olson v. State*, 2023 WY 11, ¶ 13, 523 P.3d 910, 913–14 (Wyo. 2023)). To guard against misuse of W.R.E. 404(b) evidence, this Court has a well-established procedure that must be followed:

> Once the State has filed a notice of intent to introduce such evidence, the district court must hold a hearing and conduct an "exacting analysis" of the four requirements for admitting such evidence:
>
> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Dickerson*, 2025 WY 26, ¶ 27, 564 P.3d at 594 (quoting *King v. State*, 2023 WY 36, ¶ 20, 527 P.3d 1229, 1239 (Wyo. 2023)); *see also Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342–43 (citation omitted).   We do not conduct this analysis anew on appeal but instead determine whether the district court abused its discretion in applying it. *Dickerson*, 2025 WY 26, ¶ 28, 564 P.3d at 594–95 (citation omitted).

[¶12]   The district court held the required hearing on the State's notice and conducted a *Gleason* analysis prior to admitting the text message and recorded statement referring to Mr. Bragdon's prior stay in prison.  The court held both pieces of evidence could be admitted for the proper purpose of showing intent, motive, and consciousness of guilt. After analyzing the factors established in *Gleason*, the court also held the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice.

[¶13]   Mr. Bragdon does not challenge the district court's analysis of the *Gleason* factors. Instead, he argues the text message and recorded statement referring to his prior stay in prison are not relevant to show intent, motive, and consciousness of guilt and were thus not

4

offered for a proper purpose. He contends that his references to prison do not reflect his state of mind but instead show he was found guilty and punished for some other misdeed. We disagree.

[¶14] Felony stalking is a specific intent crime requiring the State to prove a defendant, with intent to harass another person, engaged in a course of conduct reasonably likely to harass that person. *Bray v. State*, 2024 WY 120, ¶ 13, 559 P.3d 149, 151–52 (Wyo. 2024); Wyo. Stat. Ann. § 6-2-506. Wyo. Stat. Ann. § 6-2-506(a)(ii) defines "harass" in part to include written threats directed at a specific person that the defendant knew or should have known would cause "[a] reasonable person to suffer substantial fear for their safety[.]" Because direct evidence of an intent to harass is rare, felony stalking "may be proven by reasonable inferences from the character of the conduct and surrounding circumstances." *Bray*, 2024 WY 120, ¶ 19, 559 P.3d at 153 (citation omitted); *Gonsalves v. State*, 2024 WY 49, ¶ 11, 547 P.3d 340, 343 (Wyo. 2024) (citation omitted).

[¶15] In the course of regularly circling or stopping by Ms. Reimers' house, banging on her door and yelling, following her home or driving by her mother's house, making continuous calls and sending numerous text messages, Mr. Bragdon sent a text message to Ms. Reimers stating in part that he had nothing to lose, that he would go back to prison, and that he would die before he went back. It is reasonable to infer from this language that Mr. Bragdon directed a written threat to Ms. Reimers that he should have known would cause her to substantially fear for her safety. *See Bray*, 2024 WY 120, ¶ 19, 559 P.3d at 153 (citation omitted). As such, the text message is relevant circumstantial evidence showing he had the motive and specific intent to harass Ms. Reimers.[3] *See id.*; *Anderson v. State*, 2022 WY 119, ¶ 22, 517 P.3d 583, 590 (Wyo. 2022) (stating evidence of prior acts "may be admissible to prove motive and intent." (quoting *Bhutto v. State*, 2005 WY 78, ¶ 24, 114 P.3d 1252, 1263 (Wyo. 2005))).

[¶16] This Court has also held evidence of other acts, in connection with the charged offense, may be admissible to show "consciousness of guilt" or a "guilty mind." *Jackson v. State*, 2021 WY 92, ¶ 12, 492 P.3d 911, 916 (Wyo. 2021); *Palmer v. State*, 2009 WY 129, ¶ 13, 218 P.3d 941, 945 (Wyo. 2009) (quoting 1 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 4:37 at 868–69 (2007 and Supp. 2009)); *see also Wiese v. State*, 2016 WY 72, ¶ 24, 375 P.3d 805, 809 (Wyo. 2016) (holding that the evidence showing consciousness of guilt helped form the requisite specific intent to support a burglary conviction). Such evidence demonstrates "the defendant is aware of his guilt, which makes it more likely that he is guilty." *Palmer*, 2009 WY 129, ¶ 13, 218 P.3d at 945 (citation omitted). It is reasonable to infer from the text message that Mr. Bragdon

---

[3] The State suggests the text message is admissible as direct evidence of the crime rather than other acts evidence under W.R.E. 404(b). However, because the district court analyzed the evidence under W.R.E. 404(b) in a manner consistent with our case law, *e.g.*, *Jackson v. State*, 2021 WY 92, 492 P.3d 911 (Wyo. 2021), we decline to address the issue.

knew his course of conduct was wrong and may lead him back to prison, demonstrating awareness of his guilt.  Likewise, in the recorded statement with the officer, Mr. Bragdon asked if he could just receive a warning for his actions, that he knew to leave Ms. Reimers alone, and that he may lose his job and go back to prison.  The district court reasoned Mr. Bragdon demonstrated he was conscious of his actions because his statements to law enforcement could be characterized as bargaining.

[¶17]   Based on the reasonable inferences drawn from Mr. Bragdon's text message and the recorded statement, the district court reasonably concluded this evidence was offered for the relevant and proper purpose to show intent, motive, and consciousness of guilt. Therefore, the district court did not abuse its discretion when it admitted this evidence under W.R.E. 404(b).  Because we conclude the district court did not abuse its discretion, we do not need to address whether the alleged error prejudiced Mr. Bragdon.  *Vinson v. State*, 2020 WY 93, ¶ 16, 467 P.3d 1009, 1012 (Wyo. 2020) (quoting *Broberg v. State*, 2018 WY 113, ¶ 15, 428 P.3d 167, 171 (Wyo. 2018)).

[¶18]   Affirmed.